STATE OF NORTH CAROLINA v. LUCIANO DIAZ TELLEZ

No. COA09-338

(Filed 3 November 2009)

**1. Appeal and Error— preservation of issues—limiting instruction—no objection**

An appeal from a limiting instruction was not considered where defendant failed to object to the instruction when given prior to the introduction of the contested evidence, did not object to the instruction at the close of the evidence on the theory now presented, and neither assigned nor argued plain error.

**2. Homicide— second-degree murder—drunken driving—malice—evidence sufficient**

The State's evidence of defendant's convictions for reckless driving, alcohol consumption both before and while operating a motor vehicle, prior impaired driving, and driving while license revoked, as well as flight and elusive behavior after the collision, constituted substantial evidence of malice based upon depravity of mind sufficient to withstand a motion to dismiss a second-degree murder prosecution.

**3. Evidence— hearsay—trooper's account of witness's statements—admissible—corroboration**

In a second-degree murder prosecution arising from an auto collision, a Highway Patrol Trooper's testimony relating a passenger's statements about defendant (the driver) being drunk was properly admitted for corroboration because it strengthened the passenger's testimony. Furthermore, defendant could not demonstrate prejudice.

**4. Appeal and Error— preservation of issues—closing argument—general objection**

Defendant's general objection to the State's closing argument in a second-degree murder prosecution did not preserve for

appellate review an issue involving due process or other constitutional considerations.

Appeal by defendant from judgments entered 22 August 2008 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 16 September 2009.

*Attorney General Roy A. Cooper, III, by Special Attorney General Hal Askins and Assistant Attorney General Jess D. MeKeel, for the State.*

*Sofie W. Hosford, for defendant-appellant.*

JACKSON, Judge.

Luciano Diaz Tellez ("defendant") appeals from a conviction of two counts of second-degree murder and one count of felonious hit-and-run. For the reasons set forth below, we hold no error.

On 4 March 2007, at approximately 1:00 p.m., defendant arrived at a party in Coats, North Carolina where LuJayne Childers ("Childers") and Ramon Castro ("Castro") were already present. Defendant consumed approximately four beers during the party. Childers, who consumed three beers during the party, observed defendant drinking but did not spend significant time with him and did not know how much alcohol defendant had consumed. Shortly before dark, Childers, Castro, and defendant left the party. Defendant drove Castro's car; Castro sat in the front passenger seat, and Childers sat in the rear passenger seat. At the time, Childers did not believe that defendant was intoxicated.

At approximately 5:00 p.m., Dwane Braswell ("Mr. Braswell") left his house in Clayton, North Carolina with his nine-year-old son Jerry Braswell ("Jerry") to pick up his weekly paycheck in Fuquay-Varina, North Carolina. Mr. Braswell hauled logs for a living with his eighteen-wheeler truck. At 6:18 p.m., Mr. Braswell called his wife Candy Braswell ("Ms. Braswell") on a two-way radio and offered to bring dinner home.

Thereafter, Staley Ogburn ("Ogburn") observed a large truck—a tractor without a trailer attached—approach the intersection of Plain View Church Road traveling eastbound on Highway 210 at approximately fifty-five miles per hour, which was the speed limit for that portion of the highway. Ogburn had stopped at the intersection to wait for the truck to pass so that he could turn right onto Highway 210.

Meanwhile, defendant approached the intersection of Plain View Church Road and Highway 210. Defendant slowed down the car, but did not stop at the stop sign. Defendant drove around Ogburn's car and drove into the intersection at approximately twenty or twenty-five miles per hour. Childers yelled, "the truck," and Castro yelled, "the trucka," but defendant drove into the truck's path and collided with the truck. The truck rolled several times and caught on fire.

Childers did not see defendant after the collision, but he noticed that the driver's side door of the car was open. Ogburn saw two people, who appeared to be unharmed, sitting in the back seat of the car that hit the truck; Ogburn saw no one in the driver's seat.

Emergency Medical Services ("EMS") was dispatched at 6:46 p.m. and arrived on the scene at 6:53 p.m. Paramedics were unable to help the truck's occupants due to the intensity of the flames and were forced to wait for the fire department to arrive. Paramedics discovered the bodies of an adult male driver and a young male child, both burned beyond recognition. At approximately 9:35 p.m., Trooper Derek L. Mobley ("Trooper Mobley") informed Ms. Braswell that her husband and son had been killed in a car crash. Dr. Samuel Simmons ("Dr. Simmons"), an expert in forensic pathology, later testified that Mr. Braswell died of smoke and soot inhalation and thermal injury while Jerry died from smoke and soot inhalation, thermal injury, and blunt force cerebral injuries.

Trooper R. Brian Maynard ("Trooper Maynard") was the first trooper on the scene. He observed that the driver's side door of the car was ajar and that there were three beer cans inside the car—one in the driver's side door and two on the driver's side floorboard. One of the beer cans was open. Trooper Maynard also noticed a strong smell of alcohol coming from the inside of the car. Trooper Maynard took a written statement from Childers. Childers advised Trooper Maynard that she did not know where defendant was after the collision and that defendant "was drunk and left.. He was drunk and ran, got scared." Officers were unable to locate defendant that night.

On the morning of 5 March 2007, Sergeant Joe A. Starling ("Sergeant Starling") observed a person matching defendant's description at a mobile home where officers believed defendant was residing. As Sergeant Starling pulled his car up to the home, defendant, who was drinking a beer at the time, "looked directly at" and "made eye contact" with Sergeant Starling and "turned and ran directly 180 degrees from [Sergeant Starling] towards the wood line."

Sergeant Starling chased defendant and "hollered at him to stop." Defendant stopped after Sergeant Starling caught up to and placed his hands on defendant. Sergeant Starling then placed defendant under arrest. Trooper Mobley arrived minutes later and observed that defendant's clothes were damp, that he had a slight odor of alcohol about his person, and that he had scratches on his arms and face.

On the morning of 6 March 2007, police interviewed defendant with the assistance of Lea Granados, a Spanish interpreter certified by the Administrative Office of the Courts. Defendant admitted that he was driving the car at the time of the collision. Defendant stated that he did not see the truck when he pulled onto Highway 210 and that he tried to speed up upon realizing the truck was about to hit him. Defendant said he ran away after the collision because he was on probation. He also stated that he spent the night in the woods near his house. Defendant explained that he was "just having a beer" at the time Sergeant Starling encountered him at his residence.

Defendant admitted that he did not have and had never had a North Carolina driver's license, and that his privilege to obtain one had been revoked. He further admitted that he had been arrested twice for driving while impaired. Specifically, defendant had been convicted of driving while impaired on 28 August 2002 stemming from driving with a 0.12 blood-alcohol concentration ("BAC") on 15 May 2002. On 4 November 2005, defendant pleaded guilty and was placed on supervised probation for driving while license revoked and driving while impaired stemming from an incident on 29 April 2005 when, with a 0.21 BAC, he drove into two parked cars, forcing one of them into a residential building.

On 9 April 2007, a grand jury returned true bills of indictment against defendant for two counts of second degree murder and one count of felonious hit-and-run. At the 18 August 2008 Criminal Session of Johnston County Superior Court, defendant's case was called for trial. On 22 August 2008, a jury found defendant guilty as charged, and the trial court sentenced defendant as a prior record level II offender to consecutive sentences of imprisonment of 189 to 236 months, 189 to 236 months, and seven to nine months, respectively, for the convictions. Defendant appeals.

[1] On appeal, defendant first argues that the trial court improperly instructed the jury with respect to evidence of his prior impaired driving and driving while license revoked convictions and that the court effectively instructed the jury that the State had proven the element

of malice for second-degree murder. Defendant, however, has failed to preserve this argument for appellate review.

The North Carolina Rules of Appellate Procedure, Rule 10(b)(2) provides that

> [a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . . .

N.C. R. App. P. 10(b)(2) (2007). It is well-established that "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (internal citations and quotation marks omitted). *See also State v. Lopez*, 188 N.C. App. 553, 557, 655 S.E.2d 895, 898 (2008) (noting the defendant's impermissible attempt at an "equine swap"). But, the North Carolina Rules of Appellate Procedure also provide that

> [i]n criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(c)(4) (2007). *See also In re. W.R.*, 363 N.C. 244, 247 675 S.E.2d 342, 344 (2009) (noting that "plain error review is limited to errors in a trial court's jury instructions or a trial court's rulings on admissibility of evidence") (quoting *State v. Golphin*, 352 N.C. 364, 460, 533 S.E.2d 168, 230-31 (2000)).

In the case *sub judice*, the trial court, prosecutor, and defense counsel engaged in the following colloquy with respect to giving pattern jury instruction, number 104.15 prior to the introduction of evidence of defendant's previous convictions:

> [THE COURT]: Well, here is what I proposed to tell the jury. Something along these lines: Members of the jury, you are about to hear evidence tending to show that on a previous occasion the defendant was charged with—I could say another crime. I could say the crimes of driving while impaired and driving while his driver's license was revoked. I simply say as I indicated was charged with some other crime. Perhaps that's the best way to

deal with it right now. This evidence is being received solely for the purpose of showing malice as that term will be defined for you at a later time. If you believe this evidence, you may consider it, but only for the limited purpose for which it is being received.

. . . .

[THE COURT]: What says the defendant?

[DEFENSE COUNSEL]: The defendant is satisfied with that instruction, Your Honor.

During the trial, and without objection, the trial court instructed the jury:

[A]t this time I expect that you are about to hear evidence tending to show that on some previous occasion the defendant was charged with some other crime. I charge that this evidence is being received solely for the purpose of showing malice as that term will be defined for you at some later time during this trial. If you believe this evidence, you may consider it, but only for the limited purpose for which it is being received.

Thus, the limiting instruction which defendant now contests on appeal was provided in substance and virtually verbatim to the jury, without objection, at trial.

Later, at the close of all the evidence, the trial court again instructed the jury, in relevant part, as follows:

[E]vidence has been received tending to show that on two occasions prior to the date of these alleged crimes, the defendant was convicted of driving while impaired and that on two other prior occasions he was convicted of driving with a revoked license. This evidence was received solely for the purpose of showing malice. If you believe this evidence, you may consider it, but only for this limited purpose for which it was received.

During the charge conference, the trial court, prosecutor, and defense counsel discussed the wording of this instruction at length. The court indicated its intention to include instruction, number 104.15 after the element of malice in pattern jury instruction, number 206.32 for second-degree murder. Defense counsel objected on the grounds that

along the way the jury needs to know that they can't use those prior conviction[s] as evidence that he was driving while

impaired. And by taking it away from where you were going to put it and putting it into number five [of pattern jury instruction, number 206.32], what you're saying is this is what it's for, don't use it for anything else. Whereas before, it draws more attention of don't use it for guilt for any other purpose. I think it takes away something. Although it does make it very clear that it's being used for malice, I think it takes away from the instruction that it can be used for something else.

In other words, defendant objected to the limiting instruction on the grounds that it was not sufficiently limiting, not on the grounds—now advanced on appeal—that the "instruction effectively removed the State's burden of proving the critical element of malice."

Because defendant did not object to the instruction when given prior to the introduction of contested evidence, and because he did not object to the instruction given at the close of the evidence on the theory now presented, defendant was required to demonstrate that the alleged error amounts to plain error. *See* N.C. R. App. P. 10(c)(4) (2007). However, defendant neither assigned nor argued plain error, and thus, defendant has failed to preserve this issue for appellate review. *See State v. Rodriguez*, 192 N.C. App. 178, 187, 664 S.E.2d 654, 660 (2008). Since defendant failed to preserve the issue of the limiting instruction on appeal, we need not address it. *See Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008) ("[A] party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal.").

**[2]** Next, defendant contends that the trial court erred in denying his motion to dismiss the second-degree murder charges on the grounds that there was no evidence that defendant was impaired. We disagree.

In order to survive a motion to dismiss, the State must present substantial evidence "(1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "The term 'substantial evidence' . . . is interchangeable with 'more than a scintilla of evidence.' " *State v. Faison*, 330 N.C. 347, 358, 411 S.E.2d 143, 149 (1991) (quoting *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982)). " 'If there is more than a scintilla of competent evidence to support allegations in the warrant or indictment, it is the court's duty

to submit the case to the jury.' " *State v. Everhardt*, 96 N.C. App. 1, 11, 384 S.E.2d 562, 568 (1989), *aff'd*, 326 N.C. 777, 392 S.E.2d 391 (1990) (quoting *State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958)). The court must consider all of the evidence admitted, in the light most favorable to the State, giving the State the benefit of every reasonable inference. *State v. Fritsch*, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000). But, "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982); *State v. Miller*, 363 N.C. 96, 98-99, 678 S.E.2d 592, 594 (2009). "[S]o long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also 'permits a reasonable inference of the defendant's innocence.' " *Miller*, 363 N.C. at 99, 678 S.E.2d at 594 (quoting *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002)). Ultimately, it is the jury's task to resolve contradictions and discrepancies in the evidence and make the final determination of defendant's guilt. *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455.

Defendant was convicted of second-degree murder. Second-degree murder is defined as "an unlawful killing with malice, but without premeditation and deliberation." *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991). "Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *Id.* To prove malice with respect to operating a motor vehicle, "[i]t is necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *State v. Locklear*, 159 N.C. App. 588, 592, 583 S.E.2d 726, 729 (2003), *disc. rev. denied*, 358 N.C. 157, 593 S.E.2d 394, *aff'd*, 359 N.C. 63, 602 S.E.2d 359 (2004) (per curiam).

In the case sub judice, defendant concedes that there was evidence that he was operating the vehicle and that he previously had been convicted of driving while impaired. Defendant's sole contention is that there was not sufficient evidence that he was impaired while driving on 4 March 2007. By focusing on evidence of impairment, defendant attempts to direct this Court's attention away from the paramount issue—whether defendant "dr[ove] in such a reckless manner as reflects knowledge that injury or death would likely result." *Locklear*, 159 N.C. App. at 592, 583 S.E.2d at 729. *See also State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000) (holding

that in order to prove second-degree murder the State only was required "to prove [] that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result" and "was not required to show that defendant had a conscious, direct purpose to do specific harm or damage, or had a specific intent to kill").

The State's evidence clearly established that (1) defendant consumed three beers over three hours immediately prior to operating a motor vehicle; (2) defendant began consuming a fourth beer while operating a motor vehicle; (3) defendant failed to stop at a stop sign; (4) defendant drove around Ogburn's vehicle and pulled onto Highway 210 without noticing the truck; (5) defendant sped up upon realizing the truck was about to hit him; (6) defendant purportedly did not notice that the truck with which he had collided was engulfed in flames; (7) defendant fled the scene of the crash without checking on either the occupants of the truck or his friends inside the severely damaged car; (8) Childers told investigators that defendant was drunk or, at the very least, that defendant may have been drunk; and (9) defendant hid and slept in the woods and ran from police when apprehended. In ruling upon a motion to dismiss, evidence favoring the State is to be considered as a whole in determining its sufficiency. *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 652-53. It is clear that the evidence of defendant's reckless operation of the motor vehicle at the time of the collision viewed in its totality is substantial. *See State v. Davis*, 197 N.C. App. 738, 743, 678 S.E.2d 385, 389 (2009) (holding that the State's evidence that defendant had a 0.13 BAC; defendant "got into his truck and drove on a well-traveled highway"; defendant "ran over a sign and continued driving"; defendant "continued weaving side to side"; defendant "eventually ran off the road and, without braking or otherwise attempting to avoid a collision, crashed into [a] pickup truck" was sufficient to support a finding of malice).

Accordingly, we hold that the State's evidence of defendant's reckless driving, alcohol consumption both before and while operating a motor vehicle, prior impaired driving and driving while license revoked convictions, and flight and elusive behavior after the collision constitutes substantial evidence of malice based upon depravity of mind sufficient to withstand a motion to dismiss.

[3] Next, defendant argues that the trial court erred by overruling his objection to the introduction of Trooper Maynard's testimony conveying certain statements made by Childers to Trooper Maynard at

the scene of the crash that defendant "was drunk and left . . . . He was drunk and ran, got scared." We disagree.

" 'The standard of review for this Court assessing evidentiary rulings is abuse of discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Cook*, 193 N.C. App. 179, 181, 666 S.E.2d 795, 797 (2008) (quoting *State v. Hagans*, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006)). The abuse of discretion standard applies to decisions by a trial court that a statement is admissible for corroboration. *See State v. Lloyd*, 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001) ("A trial court has 'wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes.' ") (quoting *State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998)).

Hearsay—which is "generally inadmissible," *State v. Glynn*, 178 N.C. App. 689, 696, 632 S.E.2d 551, 556 (2006)—"is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). "However, out-of-court statements offered for a purpose other than to prove the truth of the matter asserted are not hearsay . . . ." *Glynn*, 178 N.C. App. at 696, 632 S.E.2d at 556. Thus, evidence offered for corroboration and not as substantive evidence will not be excluded as hearsay. *See State v. Garcell*, 363 N.C. 10, 39, 678 S.E.2d 618, 636-37 (2009).

As this Court has explained,

[c]orroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. In order to be admissible as corroborative evidence, a witness'[] prior consistent statements merely must tend to add weight or credibility to the witness's testimony. Further, it is well established that such corroborative evidence may contain new or additional facts when it tends to strengthen and add credibility to the testimony which it corroborates. If the previous statements are generally consistent with the witness' testimony, slight variations will not render the statements inadmissible, but such variations . . . affect [only] the credibility of the statement. A trial court has wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes.

*State v. Bell*, 159 N.C. App. 151, 155, 584 S.E.2d 298, 301 (2003), *cert. denied*, 358 N.C. 733, 601 S.E.2d 863 (2004) (first and second alter-

ations added) (internal citations and quotation marks omitted); *see also State v. Burton,* 322 N.C. 447, 450, 368 S.E.2d 630, 632 (1988). Ultimately, "[t]he trial court is in the best position to determine whether the testimony of [one witness as to a prior statement of another witness] corroborate[s] the testimony of [the latter]." *Bell,* 159 N.C. App. at 156, 584 S.E.2d at 302. Only if the prior statement contradicts the trial testimony should the prior statement be excluded. *See, e.g., Burton,* 322 N.C. at 450-51, 368 S.E.2d at 632-33 (holding that the trial court erred by overruling defendant's objection to the admissibility of a prior statement that the victim was "lying flat on his back when he was shot" because the prior statement contradicted the witness's trial testimony that the victim was "on top of" another individual).

In the case *sub judice,* Childers acknowledged during cross-examination that she told the investigator hired by defense counsel "[s]omething to th[e] effect" that she was not "sure whether the defendant was drunk or just a bad driver," adding, "[m]aybe he was an inexperienced driver. I didn't know if he was intoxicated. I didn't think he was." Later, during Trooper Maynard's testimony, the trial court gave the following limiting instruction to the jury:

> [Y]ou are about to hear testimony from this witness, Trooper Maynard, which might tend to show that at an earlier time a previous witness in this case, Ms. LuJayne Childers, made a statement which may be consistent or may conflict with her testimony at this trial. I instruct you that you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made and that it's consistent or does conflict with the testimony of Ms. Childers at this trial, then you may consider this, together with all other facts and circumstances, bearing upon her truthfulness, in deciding whether you will believe or disbelieve her testimony at this trial.

Trooper Maynard then testified that when he asked Childers at the scene of the crash where the driver had gone, Childers told him, "I don't know. He was drunk and left. He was drunk and ran, got scared."

The two statements relate to Childers's opinion of defendant's level of impairment at different times. Contrary to defendant's contentions, the prosecutor was not offering Trooper Maynard's statement to corroborate Childers's statement concerning her opinion

prior to the crash. Instead, the prosecutor offered Trooper Maynard's statement to corroborate Childers's testimony that she made "statements to investigators saying that she did not know whether the defendant was drunk or just a bad driver." Childers initially stated that she thought defendant may have been drunk, while Childers's statement to Trooper Maynard that defendant "was drunk" provided new information and "strengthen[ed] or add[ed] credibility to her previous statement that she admitted during testimony." *See Bell*, 159 N.C. App. at 155, 584 S.E.2d at 301.

As noted, *supra*, "[a] trial court has wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes." *Bell*, 159 N.C. App. at 155, 584 S.E.2d at 301. Here, it cannot be said that the trial court's decision was "manifestly unsupported by reason and . . . so arbitrary that it could not have been the result of a reasoned decision." *State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)), *cert. denied*, 552 U.S. 1319, 170 L. Ed. 2d 760 (2008). Further, defendant cannot demonstrate prejudice, particularly in light of the abundance of caution exercised by the trial court in giving an appropriate limiting instruction.

Accordingly, we hold that Trooper Maynard's testimony strengthened Childers's testimony, and thus, the trial court properly admitted Trooper Maynard's testimony regarding Childers's statement to him that defendant "was drunk and left . . . He was drunk and ran, got scared" for corroboration.

**[4]** Finally, defendant argues that he was denied due process of law when the trial court permitted the State to make purportedly improper statements to the jury during its closing argument. We disagree.

Defendant made only a general objection to the State's closing arguments, which the trial court overruled:

[PROSECUTOR]: . . . But if you think back to the defendant's statement that he gave to the officers, I think that is a critical piece of evidence, how much time the defendant stayed at the party because he's drinking the entire time.

[DEFENSE COUNSEL]: Objection.

[THE COURT]: Overruled:

On appeal, defendant attempts to extrapolate from that general objection an argument of constitutional magnitude. Accordingly, to the extent that the instant issue involves due process or other constitutional considerations, defendant has failed to preserve the issue for appellate review. *See State v. Dean*, 196 N.C. App. 180, 188, 674 S.E.2d 453, 459-60 (2009) ("It is well settled that constitutional matters that are not raised and passed upon at trial will not be reviewed for the first time on appeal." (internal citations and quotation marks omitted)); N.C. R. App. P. 10(b) (2007).

For the foregoing reasons, we hold no error.

No error.

Judges McGEE and STEELMAN concur.