**STATE v. JONES**

[223 N.C. App. 487 (2012)]

STATE OF NORTH CAROLINA v. ERIC STEVEN JONES AND JERRY ALVIN WHITE

No. COA12-282

(Filed 20 November 2012)

## 1. Identity Theft—sufficiency of evidence—representation as credit card holders

The trial court did not err in an identity theft case by denying defendant's motion to dismiss for insufficient evidence. The State presented sufficient evidence that defendant intended to fraudulently represent himself as the persons whose credit card numbers he used to make various purchases.

## 2. Appeal and Error—preservation of issues—sufficiency of evidence—argument not raised at trial

Defendant's argument that the trial court erred by denying his motion to dismiss the charge of identity theft because the State failed to prove that defendant possessed the credit card numbers of three or more natural persons was dismissed. Defendant failed to raise this argument before the trial court and thus, this argument was not properly preserved for appellate review.

## 3. Appeal and Error—preservation of issues—indictment—fatal variance—argument not raised at trial

Defendant's argument that the trial court erred by denying his motion to dismiss the charge of identity theft because a fatal variance existed between his identity theft indictment and the evidence produced at trial was dismissed. Defendant's trial counsel never made an argument in the trial court that the evidence at trial varied from the facts alleged in the indictment and thus, this argument was not properly preserved for appellate review. Further, no variance existed between the proof at trial and the factual allegations in the indictment.

## 4. Identity Fraud— evidence—admission of other debit cards—preservation of issues—no abuse of discretion

The trial court did not err in an identity theft case by allowing the State to introduce evidence that, when arrested, defendant possessed debit and EBT cards of two persons other than the victims in this case ("the other cards"). At the pretrial hearing, defendant made no argument that the other cards should be excluded under N.C.G.S. § 8C-1, Rule 404(b) and thus, this argument was not properly preserved for appellate review. Further,

the decision to admit evidence of the other cards was not manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision.

### 5. Indictment and Information—obtaining property by false pretenses—insufficient

The trial court did not err by granting defendant's motion to dismiss the charges of obtaining property by false pretenses where the indictment was insufficient to sustain the charge.

### 6. Indictment and Information—trafficking in stolen identities—insufficient

The trial court did not err by granting defendant White's motion to dismiss the charges of trafficking in stolen identities. The State failed to allege in the bill of indictment the name of the person to whom the transfer was made or that his name was unknown.

Judge ELMORE dissenting.

Appeals by Defendant Eric Steven Jones from judgment entered 7 September 2011 and by the State from orders entered 7 September 2011 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 29 August 2012.

> *Attorney General Roy Cooper, by Assistant Attorneys General Kimberly N. Callahan and Joseph L. Hyde, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew J. DeSimone, for Defendant Eric Steven Jones.*

> *Brock, Payne & Meece, P.A., by C. Scott Holmes, for Defendant Jerry Alvin White.*

STEPHENS, Judge.

### Procedural History and Evidence

On 28 June 2010, Defendant Jerry Alvin White ("White") was indicted on three counts of trafficking in stolen identities pursuant to N.C. Gen. Stat. § 14-113.20. On 7 September 2010, the grand jury returned a superseding indictment against White for four counts of trafficking in stolen identities. On the same date, Defendant Eric Steven Jones ("Defendant") was indicted on four counts of trafficking in stolen identities, two counts of obtaining property by false pre-

tenses, and one count of identity theft. The State's pretrial motion for joinder of the cases was unopposed and joinder was granted.

At the close of the State's evidence, both White and Defendant moved to dismiss all charges, asserting insufficiency of the evidence and fatally flawed indictments. The trial court denied the motion as to insufficiency of the evidence and delayed its ruling on the indictment issue. Neither White nor Defendant presented evidence, and both renewed their motions to dismiss at the close of all evidence.

On 7 September 2011, the jury returned guilty verdicts against White on all four counts of trafficking in stolen identities, and against Defendant on two counts of obtaining property by false pretenses and one count of identity theft. After receiving the jury's verdicts, the court dismissed the charges of obtaining property by false pretenses against Defendant and all counts of trafficking in stolen identities against White, concluding that those indictments were "insufficient as a matter of law." The court denied Defendant's motion to dismiss as to the offense of identity theft.

The trial court determined Defendant was a Prior Record Level II for sentencing purposes and imposed an active term of 18 to 22 months imprisonment on the identity theft conviction. From this judgment, Defendant appeals. From the orders dismissing the remaining charges against Defendant and all charges against White, the State appeals. We find no error.

The evidence at trial tended to show the following: On 2 June 2010 between 4:30 and 5:00 a.m., Officer Steven Maloney of the Charlotte-Mecklenburg Police Department ("CMPD") observed a silver Hyundai Accent he believed to be suspicious and began following it. Maloney ran a computer check on the car's tag number and discovered it was a suspect vehicle in a financial transaction card theft case committed at Tire Kingdom. Maloney initiated a traffic stop. Defendant, the driver, was unable to produce a valid driver's license or registration card.

When Maloney searched the car, he found two bags of marijuana and a work order from Maaco Collision Repair ("Maaco") listing James Coleman as the customer. Maloney arrested Defendant, and upon searching him, discovered a debit card bearing the name "Elaine Taylor" and an EBT (food stamp) card in the name of "Lonnie Bickman," as well as pieces of paper listing the name, address, and credit card information of four victims in this case: James Payton, Charles Batchelor, Sean Daly, and John Rini. A subsequent police

investigation revealed that each of the four men had been checked in by White, a front desk clerk, for stays at the Blake Hotel in Charlotte in May 2010.

On 12 May 2010, Payton stayed at the Blake Hotel and paid with a credit card assigned to him and bearing his name, but issued on a corporate account in the name of JEL Construction, Inc. Later, Payton was notified by the fraud department of the credit card company that there had been suspicious charges made to his account, including $54.13 and $43.30 to Cricket Communications, $650.78 and $369.46 to Duke Energy, and $236.47 to Foot Action.

Also on 12 May 2010, Batchelor stayed at the Blake Hotel and paid with a credit card issued directly to him; however, the card was a corporate card with Batchelor listed as a secondary cardholder on the account. The primary account holder was his employer, Christina Close of C & C Swimming, Inc. Fraudulent charges in the amount of $5.42 were made for purchases at Cricket Communications using this card number.

On 20 May 2010, Daly stayed at the Blake Hotel and paid with a corporate credit card issued to Identity Theft 911, LLC. The card bore the company name as well as Daly's name, who was the president and CEO of the company. Daly verified that no fraudulent charges were made to his card.

On 20 May 2010, Rini also stayed at the Blake Hotel and used a personal credit card to pay for his stay. Rini's credit card statement revealed fraudulent charges for purchases made at Cricket Communications in the amount of $64.95.

On 10 June 2010, CMPD Detective Kevin Stuesse and Special Agent Tom Hunter interviewed White. During the interview, White admitted to writing down the credit card information, names, and addresses for Payton, Batchelor, and Daly, and did not deny passing the information to another individual. White denied writing down Rini's information. After the interview, White was arrested.

Further investigation revealed that, on 18 May 2010, a Hyundai Accent with the same vehicle identification number as the car Defendant was driving when arrested had been dropped off at Tire Kingdom for the installation of four new tires and rims, an alignment, and brake services. The work order listed the customer as James Payton. The serial numbers on the tires purchased at Tire Kingdom matched the serial numbers on the tires of the Hyundai Accent. The

$1,181.09 bill was paid for over the phone with a Visa credit card ending in 3501. Upon pickup of the vehicle, the receipt was signed by a male who used the name James Payton. On 20 May 2010, Melanie Wright's Visa ending in 3501 was charged in the amount of $1,181.09; the evidence tended to show that Wright had previously stayed at the Blake Hotel. On 24 May 2010, Defendant, representing himself as James Coleman, brought the Hyundai Accent to Maaco to be painted and paid with a credit card in the name of Mary Berry.

## Discussion

On appeal, Defendant brings forward four arguments: that the trial court erred in denying his motion to dismiss the identity theft charge where the State failed to prove (1) that he possessed the specific intent required and (2) that he possessed the credit card numbers of three or more natural persons; and where (3) there existed a fatal flaw in his identity theft indictment; and (4) in allowing the State to introduce certain evidence under Rule 404(b). We dismiss in part and find no error in part.

The State brings forward two arguments on appeal: that the trial court erred by granting (1) Defendant's motion to dismiss the charges of obtaining property by false pretenses; and (2) White's motion to dismiss the charges of trafficking in stolen identities. We find no error.

## Defendant's Appeal

### 1. Specific Intent

[1] Defendant first argues that the trial court erred in denying his motion to dismiss because the State failed to prove that he possessed the specific intent necessary to be convicted of identity theft, to wit, the intent to fraudulently represent himself as the persons whose credit card numbers he used to make various purchases. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss de novo." State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> On a motion to dismiss, the trial court's task is to determine whether there is substantial evidence of each essential element of the charged offense. Substantial evidence is such evidence as a reasonable mind would accept as sufficient to support a conclusion. All of the evidence actually admitted, both competent and incompetent may be considered. Such evidence should be viewed in the light most favorable to the State, giv-

ing the State the benefit of every reasonable inference to be drawn therefrom. . . . If the State has offered substantial evidence of each essential element of the crime charged, the defendant's motion must be denied.

*State v. Rupe*, 109 N.C. App. 601, 607-08, 428 S.E.2d 480, 485 (1993) (citations omitted).

Identity theft occurs when a person

knowingly obtains, possesses, or uses identifying information of another person, living or dead, *with the intent to fraudulently represent that the person is the other person* for the purposes of making financial or credit transactions in the other person's name, to obtain anything of value, benefit, or advantage, or for the purpose of avoiding legal consequences[.]

N.C. Gen. Stat. § 14-113.20(a) (2011) (emphasis added). "Intent is an attitude or emotion of the mind, and is seldom, if ever, susceptible of proof by direct evidence. It must ordinarily be proven by facts and circumstances from which it may be inferred." *State v. Little*, 278 N.C. 484, 487, 180 S.E.2d 17, 19 (1971). Thus, "[i]t is not necessary that the State offer direct proof of fraudulent intent if facts and circumstances are shown from which it may be reasonably inferred." *Rupe*, 109 N.C. App. at 609, 428 S.E.2d at 486. Specifically, the appellate courts of this State have long recognized that fraudulent intent in various financial crimes need not be shown by a verbal misrepresentation, but can also be established based upon a defendant's conduct or actions. *See, e.g., id.* (embezzlement); *State v. Parker*, 354 N.C. 268, 553 S.E.2d 885 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002) (obtaining property by false pretenses by presenting another's driver's license and bank withdrawal slip to a bank teller in order to get cash); *State v. Perkins*, 181 N.C. App. 209, 638 S.E.2d 591 (2007) (obtaining property by false pretenses by using another's credit card to make purchases).

Here, Defendant contends that no evidence was offered that he "fraudulently represent[ed] that [he was] the other person for the purposes of making financial or credit transactions in the other person's name." N.C. Gen. Stat. § 14-113.20(a). Specifically, Defendant notes that the State failed to present any evidence about who the user of the credit cards represented himself to be when making purchases at Foot Action, Duke-Energy, and Cricket Communications. Further, Defendant points out that the person who made the Tire Kingdom purchase represented himself as James Payton, but paid with a credit

card number belonging to Mary Wright, and the person who made the purchase at Maaco represented himself as James Coleman, while paying with a credit card assigned to Mary Berry. Thus, Defendant asserts that the State failed to present substantial evidence that he represented himself to be any of the persons to whom the credit cards belonged. We are not persuaded.

Here, the evidence tended to show that Defendant possessed the credit card information of several other people without authorization, was the owner[1] of the Hyundai Accent which had received a paint job, new tires, and other products and services paid for via unauthorized charges to some of the credit cards, possessed a cell phone from a store where unauthorized charges were made to some of the credit cards, and had a utility account for which one of the credit cards was used to make a payment. Taken in the light most favorable to the State, this evidence would support a reasonable inference by the jury that Defendant fraudulently used credit card numbers belonging to other people without authorization to make purchases and payments on his own behalf. In keeping with our State's case law on implicit misrepresentations by conduct, we hold that, when one presents a credit card or credit card number as payment, he is representing himself to be the cardholder or an authorized user thereof. Accordingly, where one is not the cardholder or an authorized user, this representation is fraudulent. No verbal statement of one's identity is required, nor can the mere stating of a name different from that of the cardholder negate the inference of misrepresentation. Because the State here presented substantial evidence that Defendant intended to use the credit card information of others to fraudulently obtain financial benefit, the trial court properly denied Defendant's motion to dismiss the identity theft charge. Accordingly, this argument is overruled.

## 2. *Identifying Information of Natural Persons*

**[2]** Defendant next argues that the trial court erred in denying his motion to dismiss the charge of identity theft because the State failed to prove that defendant possessed the credit card numbers of three or more natural persons. Defendant bases this contention on the fact that three of the four credit card numbers he possessed were issued to business entities rather than to natural persons. We dismiss this argument as not properly before us.

---

1. Another man was the registered owner of the car, but when contacted by police, the man explained that he had sold the car to Defendant and was merely holding on to the title until Defendant finished paying him.

Rule 10(a)(1) of our Rules of Appellate Procedure requires that, in order to preserve an issue for appellate review, "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R.. App. P. 10(a)(1) (2011). "It is well-established that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Tellez*, 200 N.C. App. 517, 521, 684 S.E.2d 733, 736 (2009) (citations and quotation marks omitted).

At the close of the State's evidence, Defendant's trial counsel first made extensive arguments about alleged defects in the indictments, before concluding with the following statement:

> [Defendant's counsel]: So first, the indictment issues I'd ask really all charges be dismissed.
>
> And as far as the sufficiency of the evidence, I would also ask that, *especially on the trafficking charges, that there is no evidence that was presented*—no—*the State did not present sufficient evidence on each element for the trafficking, i.e., purchased.* They never said that anything was purchased. And this goes back to the sufficiency of the evidence.
>
> Mr. White's transcript says that he never received anything of value for this at all, and that hadn't been, I guess, stated anywhere that anyone received anything—well, that he sold, transferred or purchased the identifying information.
>
> *So as far as the trafficking goes*, I would ask that there's been, in the light most favorable to the State, *no evidence presented that he purchased* because you will focus specifically on purchased the information. [sic]
>
> And then, I guess, on the third element also that because of the confusion with the corporate entities and the way it's written, it's almost like *you have to take that information and then use the same person's information. You can't take someone's financial information and use a different name.* That's whatever name it is.
>
> *So for those reasons, we would argue that the charges should be dismissed* and all the charges—additionally—in addition to the indictment issue, we'd ask they be dismissed because the State hasn't met its burden at this point.

(Emphasis added).

As the above-quoted portion of the transcript shows, Defendant's trial counsel did not argue the failure of the State to prove that Defendant possessed the credit card numbers of three or more natural persons as a basis for his motion to dismiss for insufficiency of the evidence. Rather, he made two arguments: that no evidence of a purchase had been presented and that "[y]ou can't take someone's financial information and use a different name." While the latter argument includes a passing mention of "confusion with the corporate entities," its essence can only be reasonably interpreted as a reference to Defendant's argument 1 *supra*, namely, that because Defendant gave the credit card numbers of certain victims but did not verbally state that he was the victims, the State had not met its burden of proof. In renewing his motion to dismiss at the close of all evidence, Defendant merely asked that all charges against him be dismissed without noting a specific basis. Defendant, having failed to make the argument he now makes on appeal in support of his motion to dismiss in the trial court, has not preserved it for our review. *See Tellez*, 200 N.C. App. at 521, 684 S.E.2d at 736. Accordingly, we dismiss this argument.

3. *Variance between the identity theft indictment and the evidence at trial*

Defendant next argues that a fatal variance existed between his identity theft indictment and the evidence produced at trial. Specifically, he contends that while the indictment for identity theft alleged that Defendant possessed credit card numbers belonging to four natural persons, the evidence at trial showed that three of the credit cards in question were actually business credit cards owned by the businesses and merely issued in the names of the four natural persons. We must also dismiss this argument.

> Whether an indictment is sufficient on its face is a separate issue from whether there is a variance between the indictment and the evidence presented at trial, although both issues are based upon the same concerns[:] . . . to insure that the defendant is able to prepare his defense against the crime with which he is charged, and to protect the defendant from another prosecution for the same incident.

*State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002). "A variance occurs where the allegations in an indictment, although

they may be sufficiently specific on their face, do not conform to the evidence actually established at trial." *Id.*

Because jurisdiction is implicated, "a defendant on appeal may challenge an indictment on the grounds that the indictment is insufficient to support the offense of which [the] defendant was convicted, even when the defendant failed to challenge the indictment on this basis at trial." *Id.* at 591, 562 S.E.2d at 456.[2] However, "a challenge to a fatal variance between the indictment and proof" is made by motion to dismiss for insufficiency of the evidence in the trial court. *State v. Wall*, 96 N.C. App. 45, 49-50, 384 S.E.2d 581, 583 (1989).

Here, our review of the transcript reveals that Defendant's trial counsel never made an argument in the trial court that the evidence at trial varied from the facts alleged in the indictment:

> As far as the identity theft portion of it, the statute is a little confusing. If the Court would indulge me. I'm just going to try to read the jury instruction because it's confusing.
>
> [trial counsel reads statute and discusses the specific intent/verbal misrepresentation argument addressed in section 1 *supra*]
>
> . . . .
>
> So that's kind of what the problem is with those two indictments also. They don't properly state or they don't do what the law requires, and it's confusing to say how it should go, but I'm going to kind of try to, say, like it should be like.
>
> For example, it should say he used the number of Payton to obtain things of value or used—they both should say, I guess, the same person. That's what I'm trying to say. He—in order to commit this crime, he would have to say I am James Payton; this is James Payton's credit card information, because that's what the elements one and two says. . . .
>
> *And then additionally, going back to those charges, we still have that corporate identification issue, which I won't go into again, with Batchelor, Payton and Daly because, because they are not the actual victims; they are employees*

---

2. "There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence of an accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction a trial and conviction are a nullity." *McClure v. State*, 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966) (citations and quotation marks omitted).

*of the victims and it should say that, and I won't continue too much longer.*

*It should say Identity Theft, 911, LLC for Daly, Batchelor, C and C Swimming, doing business whoever their other name is, and Payton would be JEL Construction Incorporated.*

So for all those reasons, Your Honor, I would ask that we dealt with the indictment issue.

You asked about, I guess, sufficiency of the evidence now. Do you want to address that now?

. . . .

[defense counsel makes various unrelated sufficiency of the evidence arguments]

And then, I guess, on the third element *also that because of the confusion with the corporate entities and the way it's written, it's almost like you have to take that information and then use the same person's information. You can't take someone's financial information and use a different name. That's whatever name it is.*

(Emphasis added). Defendant never argued variance between the proof at trial and the indictment and specifically made his identity theft argument in the context of challenging the facial validity of the indictments. When he turned to arguments regarding the sufficiency of the evidence, the proper channel for addressing alleged variances, he returned only to the specific intent/verbal misrepresentation argument. Accordingly, Defendant has not preserved this issue for our review, and we must dismiss.

We further note that, even were the matter properly before us on appeal, Defendant would not prevail. "[N]o fatal variance exists when the indictment names an owner of the stolen property and the evidence discloses that that person, though not the owner, was in lawful possession of the property at the time of the offense." *State v. Liddell*, 39 N.C. App. 373, 374-75, 250 S.E.2d 77, 78 (1979). Here, Batchelor, Payton, and Daly were the only authorized users of the credit cards issued to their respective businesses, and no evidence at trial suggested they were not in lawful possession thereof. Thus, no variance existed between the proof at trial and the factual allegations in the indictment.

*4. Admission of evidence about other cards*

[4] Finally, Defendant argues that the trial court erred in allowing the State to introduce evidence that, when arrested, Defendant possessed debit and EBT cards of two persons other than the victims in this case ("the other cards"). On appeal, Defendant bases his arguments on alleged violations of North Carolina Rules of Evidence 403 and 404(b). Defendant's argument under Rule 404 is not before us. As to his argument under Rule 403, we disagree.

During a pretrial hearing, Defendant's counsel reviewed the State's exhibit list and objected to introduction of the other cards:

> My client wasn't charged with anything related to Lonnie Bickman or Elaine Taylor. These items are in the discovery, but he hadn't been charged with them, and he hadn't—I don't know what the purpose of the introduction of those are other than to basically *confuse the jury* with some information that he had an EBT card or a Visa debit card on him, but *they're not relevant* I would argue to any determination of anything in this particular case.

Defendant also objected on hearsay grounds, noting that the persons to whom the other cards apparently belonged were not available to testify and be cross-examined. The State responded:

> The credit cards are 404(b) evidence. In addition, they are items that were found on Mr. Jones' possession at the time he was arrested. They indicate, I believe, knowledge, intent, lack of mistake that you have two other credit card numbers belonging to other individuals. I do not plan on calling those individuals to testify. However, I think it is incredibly probative that those were also found in his possession.

> Detective Stuesse will testify he attempted to make contact with those individuals, but no contact information could be located for them.

In response, Defendant continued to argue that the other cards should not be admitted because they were irrelevant, overly prejudicial, and likely to confuse the jury:

> They're just going to, again, have evidence here that's highly prejudicial, information for which my client is not even charged with. It's not in the indictment. They're listed in discovery, but we'd argue that would be *highly prejudicial*

*against my client* based on the nature of the case. If he had used these cards, why didn't they charge him with it? Why didn't they make us aware earlier today we're going to introduce these cards? This is definitely an issue that I would argue does not need to be introduced. There's no reason for this except *to confuse the jury* to say, oh, he had someone else's card, which he wasn't charged with. He had to be using these other cards fraudulently. I think there is some issue where these cards were found and where the other information that had credit card numbers that the State will allege were found at.

. . . .

It is clearly—*it should not be allowed under I'd say Rule 403.* If it's relevant, if it's probative, still hearing this without any explaining, just how are they going to introduce it?

. . . .

If it is relevant and it is probative, the *value of any of that relevance or probative value is outweighed by clearly undue prejudice* to my client that the jury is going to hear, and we'd argue it not be allowed.

(Emphasis added). Thus, at the pretrial hearing, Defendant made no argument that the other cards should be excluded under Rule 404(b). Instead, he argued that the other cards were either not relevant as defined in Rule 401 or that, if relevant, the minimal probative value of the other cards was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2011).

During trial, when the State attempted to elicit testimony about the other cards, Defendant objected:

Well, Your Honor, this objection was based on our previous conversation about the two—I think the officer wasn't allowed to testify to two other financial cards that were found in Mr. Jones's wallet, one is Elaine Taylor, and one of Lonnie Bickman, and part of it was those *should be excluded based on Rule 403.*

He's not charged with any kind of identity theft or fraud or anything of Elaine Taylor or Lonnie Bickman. And we would argue *under Rule 403 that although this evidence may be relevant, it should be excluded because it's* [sic] *probative value is sub-*

*stantially outweighed by the danger of any unfair prejudice, confusion of the issues, or misleading of the jury upon consideration of delay, waste of time, or needless presentation of evidence.*

Essentially what we're arguing is this is —he's charged with these other financial theft charges. He's not charged with these people's—stealing these people's—these individuals['] identification. And we think this should not be allowed because the jury is not going to be able to differentiate between what he's charged with and what he's not charged with.

In this case he's not charged with this, there's no investigation that this is anything illegal. They didn't charge him, so therefore I'd argue that this information should not be gone into, especially when he has all these other charges which basically amount to four counts of identity theft, two counts of obtaining property by false pretenses, and trafficking in stolen identities.

I think it's going to *confuse the jury*, it's going to be really *very prejudicial* to Mr. Jones. And perhaps if he was charged with it, then I would argue that it might be relevant. And *it may be relevant now*, but I'd just say *the probative value is outweighed by the danger of unfair prejudice.*

(Emphasis added). The transcript makes clear that, at trial, Defendant only objected to the evidence of the other cards under Rule 403. Accordingly, we do not consider Defendant's arguments on appeal regarding Rule 404(b), but instead address the trial court decision to admit evidence about the other cards over Defendant's Rule 403 objection.

"A trial court's rulings under Rule 403 are reviewed for an abuse of discretion. . . . This Court will find an abuse of discretion only where a trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Theer*, 181 N.C. App. 349, 359-60, 639 S.E.2d 655, 662-63 (2007) (citations and quotation marks omitted); *see also State v. Beckelheimer*, ___ N.C. App. ___, ___, 726 S.E.2d 156, 159 (2012).

In response to Defendant's objection at trial, the State argued that the other cards tended to show Defendant "had the intent and the motive and the plan to commit identity theft and credit card fraud by possessing credit cards belonging to not just [the victims in the

instant case], but also these other individuals as well[.]" The transcript reveals that the trial court carefully considered the arguments made by both parties and specifically questioned the State about the probative value of the other cards and the jury's possible confusion. The trial court ultimately admitted evidence of the other cards to show intent. Because the decision to admit evidence of the other cards was not "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision[,]" *Theer*, 181 N.C. App. at 360, 639 S.E.2d at 662-63 (quotation marks omitted), we hold that the court did not abuse its discretion. Accordingly, this argument is overruled.

### The State's Appeal

*1. Indictment against Defendant for obtaining property by false pretenses*

[1] The State first argues that the trial court erred by granting Defendant's motion to dismiss the charges of obtaining property by false pretenses, contending that the indictment failed to specify with particularity the property obtained. We disagree.

> The indictment must charge the essential elements of the alleged offense. To provide notice, an indictment must contain, a plain and concise factual statement in each count which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation. The elements of obtaining property by false pretenses are (1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.
>
> Regarding the crime of obtaining property by false pretenses, it is the general rule that the thing obtained . . . must be described with reasonable certainty, and by the name or term usually employed to describe it.

*State v. Ledwell*, 171 N.C. App. 314, 317, 614 S.E.2d 562, 565 (2005) (citations, quotation marks, and brackets omitted) (alterations). For example, an

> allegation that the defendant obtained "goods and things of value" is too vague and uncertain. The "goods and things"

should have been described specifically by the names and terms usually appropriated to them; and since it was money that was sought to be proven the defendant had fraudulently obtained it should have been described at least by the amount, as, for instance, so many dollars and cents.

*State v. Smith*, 219 N.C. 400, 401, 14 S.E.2d 36, 36-37 (1941) (citations and quotation marks omitted) (holding that an indictment charging a defendant with obtaining money by false pretenses should describe the money by the amount); *State v. Gibson*, 169 N.C. 380, 383 (169 N.C. 318), 85 S.E. 7, 8 (1915) (holding that a promissory note must be described as such and not as money); *State v. Reese*, 83 N.C. 637, 639 (1880) (holding that indictments for obtaining property by false pretenses should describe goods by the usual name and money in "dollars and cents").

Here, the indictment alleged that Defendant obtained "services" from Tire Kingdom and Maaco, without even the most general description of the services or their monetary value. This indictment was plainly insufficient to sustain the charge. Accordingly, we conclude that the trial court did not err in dismissing the obtaining property by false pretenses charges against Defendant.

In light of our holding *supra* that the trial court properly dismissed the obtaining property by false pretenses charges against Defendant, we need not address the State's alternative argument that the trial court erred in dismissing those charges on the basis that the indictment failed to name the proper owner of the credit card used to obtain the services.

*2. Trafficking in Stolen Identities: Naming Recipient of Identifying Information*

**[6]** The State argues that the trial court erred by granting White's motion to dismiss the charges of trafficking in stolen identities. We disagree.

In a long line of cases involving the illegal trafficking of substances ranging from seeds to liquor to narcotics, the Courts of this State have consistently held that

it is necessary, for a conviction, to allege in the bill of indictment the name of the person to whom the [transfer] was made or that his name is unknown, unless some statute eliminates that requirement. The proof must, of course, conform to the

allegations and establish a [transfer] to the named person or that the purchaser was in fact unknown.

*State v. Bissette*, 250 N.C. 514, 517-18, 108 S.E.2d 858, 861 (1959) (misleadingly-labeled tobacco seed); *see also State v. Bennett*, 280 N.C. 167, 185 S.E.2d 147 (1971) (narcotics); *State v. Blythe*, 18 N.C. 199 (1835) (spiritous liquors). In *Bissette*, the Court explained the reasoning behind this holding:

> The authorities are in unison that an indictment, whether at common law or under a statute, to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged. The purpose of such constitutional provisions is: (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial[;] and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case.

*Bissette*, 250 N.C. at 516, 108 S.E.2d at 859 (citation and quotation marks omitted).

Defendant was charged under this State's trafficking in stolen identities statute, which makes it "unlawful for a person to sell, transfer, or purchase the identifying information of another person with the intent to commit identity theft, or to assist another person in committing identity theft, as set forth in [section] 14-113.20." N.C. Gen. Stat. § 14-113.20A(a) (2011). In turn, section 14-113.20 makes it a felony for any "person [to] knowingly obtain[], possess[], or use[] identifying information of another person[.]" N.C. Gen. Stat. § 14-113.20(a) (2011). No language in either statute eliminates the common law requirement that the recipient of the identifying information be specified. Accordingly, under the reasoning and rule set forth in *Bissette*, in order to charge Defendant with trafficking in stolen identities, the State was required "to allege in the bill of indictment the name of the person to whom the [transfer] was made or that his name is unknown[.]" 250 N.C. at 518, 108 S.E.2d at 861.

We would note that the nature of the "identifying information" covered by the statute at issue here makes the common law rule discussed above particularly crucial to avoid the risk of double jeopardy in such cases. The types of information covered by the trafficking in stolen identities statute are listed in section 14-113.20(b) and include

**STATE v. JONES**

[223 N.C. App. 487 (2012)]

various numbers, passwords, and other personal data. N.C. Gen. Stat. § 14-113.20(b). Unlike seeds, liquor, narcotics, or other tangible items, these types of information are fully retained by the thief even after they have been transferred to one or more persons. Thus, the same piece of personal identity information, such as a credit card number, can be trafficked an infinite number of times to an infinite number of recipients. For example, a defendant may steal a single credit card number, but then transfer that single credit card number to hundreds of others. This assessment applies equally to every example of identity information listed in section 14-113.20(b).

Put simply, the double jeopardy risk to which a defendant charged with trafficking in stolen identities under section 14-113.20A is put lies *not* with any lack of clarity about the *identity of the stolen information* for which he is being prosecuted. Rather, the danger lies in a lack of clarity as to which *incidence of trafficking* the stolen information he must defend. Given the susceptibility of a single piece of identity information being transferred to multiple persons, we hold that indictments for trafficking in stolen identities must specify the identity of the recipient of the stolen information. Accordingly, the indictments against White were fatally flawed, and the trial court's dismissal of those charges was not error.

DISMISSED IN PART; NO ERROR IN PART.

Judge CALABRIA concurs.

Judge ELMORE concurs in part and dissents in part.

ELMORE, Judge, dissenting in part, concurring in part.

I respectfully disagree with the majority's decision to uphold the trial court's dismissal of the charges for trafficking in stolen identities against White. The majority concludes that, as per the common law, an indictment for trafficking in stolen identities must name the recipient of the identifying information or provide that such name is unknown. From this decision, I respectfully dissent.

In making such determination, the majority's decision hinges on the application of the common law rule that requires indictments charging a person with the sale and/or transfer of an illicit substance to include the purchaser or recipient of the illicit substance or provide that such person is unknown, unless the requirement is elimi-

nated by statute. *See State v. Bissette*, 250 N.C. 514, 517, 108 S.E.2d 858, 861 (1959).

I do not contest the validity of the common law rule as applied to indictments charging a person with the sale and/or transfer of an illicit substance. However, I recognize that the inherent nature of prosecuting crimes involving the sale and/or transfer of illicit substances is unique in that such substances do not possess any independent identifying information in-and-of-themselves—a gram of cocaine is a gram of cocaine. Therefore, in order to avoid double jeopardy concerns and ensure that the accused is on notice of the crimes for which he has been charged, it is helpful that these indictments name the recipient of the illicit substance.

Alternatively, trafficking in stolen identities is a distinct crime and, in this instance, the common law rule is inapplicable. It is informative to consider the items that the legislature deemed to be "identifying information" as set out in N.C. Gen. Stat. § 14-113.20(b). The documents and information listed in the statute include, but are not limited to, one's social security number, driver's license number, passport, bank account number, and credit card numbers. These items each have independent identifying characteristics which can be specifically described in an indictment so as to put the accused on notice regarding the identifying information he allegedly sold or transferred. Moreover, transactions involving the use of one's identifying information are generally traceable.

Few cases have dealt with issues pertaining to the crime of trafficking in stolen identities, most likely because such crimes have only recently become more prevalent. Today, it is not uncommon for the average person to have his credit card information, bank account number, passwords, and other personal information stored online. Accordingly, the identifying information provided for in N.C. Gen. Stat. § 14-113.20(b) is the type of information often stored online. It can be easily accessed without authorization and transferred to another in an anonymous online transaction.

The majority contends that the application of the common law rule is "even more crucial to avoid the risk of double jeopardy" because the identifying information provided for in N.C. Gen. Stat. § 14-113.20(b) can be trafficked an infinite number of times. However, the majority fails to account for the fact that oftentimes the transferor himself may not know the recipient of the identifying information. Those who utilize the internet to sell identifying information

have the ability to pass such information in an anonymous vacuum. As such, should we impose the common law rule, the majority of indictments would likely provide that the transferee's identity is "unknown." Therefore, it is not advantageous to *require* such indictments to name the recipient. I do not suggest that the inclusion of the recipient's name in a trafficking indictment should be prohibited as I recognize that the inclusion of the recipient's name helps to ensure the indictment is sufficiently particular. However, its inclusion is not so vital that without it the accused would be unsure of the accusations against him and thus unable to adequately prepare his defense.

Furthermore, this Court need not consider whether the trafficking indictment could have been more definite and certain. We need only to consider whether the indictment sufficiently apprised a defendant of "the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5)(2011). Ultimately, imposing the common law rule is short-cited as it fails to account for the unique nature of trafficking in stolen identities, especially the possibility that the recipient's identity may be unknown to the transferor.

Turning now to the case at hand, White transferred the credit card numbers of the victims to defendant who then made fraudulent purchases using those numbers. White's indictment alleged all of the essential elements of the offense and contained the date of transfer, the place of transfer, the victim's name, and the type of identifying information allegedly trafficked.

White neither argued that by the failure to name defendant as the recipient he was deprived of needed information in order to adequately prepare for trial, nor did he claim that he was in doubt as to whom he allegedly transferred the credit card information. Furthermore, White was not liable for any fraudulent purchases made by defendant after the date of transfer. Should White have needed further clarification in order to prepare his defense, he was entitled to file a motion for a bill of particulars.

Here, White's indictment did not name defendant as recipient of the identifying information because the inclusion of the recipient's name is neither an element of the offense nor required by statute. In looking at the sum of the information included in White's indictment, I believe that White was not prejudiced by the fact that the indictment failed to name defendant as the recipient; thus the purpose of the indictment has been served. Therefore, because I believe the trial

court erred in dismissing the charges against White, I would reverse the decision and remand for a sentencing hearing of White. I concur in all other aspects of the majority opinion.