## STATE v. NATHAN TISDALE.

(Filed 10 October, 1907).

**Indictment—Spirituous Liquor—Sale—License—Evidence.**

An indictment for the sale of spirituous liquor in prohibited territory must charge a sale to some person by name or to some person unknown to the jurors. When the bill is faulty in this respect, Revisal, sec. 2060, providing that the possession of a license, or issuance to any person of a license to sell, etc., by the Department of Internal Revenue, shall be *prima facie* evidence that such person is guilty of doing the act permitted by the license, is insufficient, such charge being too general, and it being necessary that the facts constituting the offense be set forth.

WALKER, J., concurring; CLARK, C. J., dissenting.

INDICTMENT for the sale of spirituous liquor in prohibited territory, tried before *Neal, J.,* and a jury, at June Term, 1907, of the Superior Court of CRAVEN County. There was a verdict of guilty. From the judgment rendered defendant appealed.

*Assistant Attorney-General Clement, D. L. Ward* and *L. I. Moore* for the State.

*W. D. McIver* and *R. A. Nunn* for defendant.

BROWN, J. It is unnecessary to consider any of the exceptions taken by the defendant on the trial, as his exception to the bill of indictment is well taken, and the motion to arrest the judgment must be allowed. The first count charges the unlawful sale of liquor, without a license, to some person to the jurors unknown, in violation of the general law. The second count charges the unlawful sale to some person to the jurors unknown, within territory wherein the sale of liquor is wholly prohibited by law. The third count is as follows: "The jurors aforesaid, upon their oaths aforesaid, do further present: That the said Nathan Tisdale, late of the county of Craven, on 20 September, 1906, unlawfully and willfully, did engage in and carry on the business of retail liquor dealer, by

selling spirituous and malt liquor to divers persons in the city of New Bern, said city of New Bern being an incorporated town, where the sale of spirituous and malt liquors is forbidden by law, and where the majority of the qualified voters of said city had voted against the sale of spirituous, vinous and malt liquors in said city and for prohibition, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State." The State entered a *nol. pros.* as to the first and second counts. The Court below overruled defendant's motion as to the insufficiency of the third count, and the defendant was tried and convicted upon that count alone.

This count does not charge the defendant with a sale of liquor to any specific person by name, nor does it charge a sale to any person whose name is unknown to the jurors. It charges that the defendant did engage in and carry on the general business of a retail liquor dealer in the city of New Bern, where the sale of liquor is prohibited by law.

The learned counsel for the State rely upon section 2060 of the Revisal to sustain the bill. This section provides that the possession or issuance to any person of a license to manufacture, rectify or sell, at wholesale or retail, spirituous or malt liquors by the United States Government or any officer thereof in any county, city or town where the manufacture, sale or rectification of spirituous or malt liquors is forbidden by the laws of the State, shall be *prima facie* evidence that the person having such license, or to whom the same was issued, is guilty of doing the act permitted by the said license, in violation of the laws of this State. There is nothing in it, or any other statute to which our attention has been called, or which we have been able to find, which supports the contention of the State. It is evident the General Assembly never thought it necessary to create any such specific offense as carrying on the general business of retailing liquor in territory where its sale is entirely forbidden. In such territory

liquor is a contraband, and the sale of it. is a secret transaction.    The bill of indictment may charge a sale to some person by name, or to some person unknown to the jurors.    It must charge one or the other.    *State v. Stamey,* 71 N. C., 202.    In an indictment for the unlawful sale of liquor it is not sufficient to charge the defendant generally with the offense of illegal selling.    The facts constituting the offense must be set forth.    *State v. Faucett,* 20 N. C., 239.    "Every necessary ingredient in the offense must be set forth," says *Judge Daniel* for the Court, in that case, and he then proceeds to state the exceptions to the rule, viz., indictments against a common barrator, a common scold, for keeping a common gambling house or bawdyhouse.

In *State v. Stamey* the identical point is decided, as it was in *Faucett's case,* both being indictments for selling liquor. In *State v. Blythe,* decided in 1835, the question seems to have been first presented to this Court.    It is there held, in an opinion by *Chief Justice Ruffin,* that the indictment was defective because the names of the slaves to whom the liquor was sold were not set out in the bill.    The learned Chief Justice says: "Every indictment ought to have convenient certainty as to time, place and persons, and give to the accused reasonable notice of the specific facts charged on him, so that he may have an opportunity of defending himself.    Here the indictment conveys no information of that sort."

The same principle of criminal pleading is set forth in *State v. Ritchie,* 19 N. C., 29.    The *Stamey case* is cited with approval in *State v. Pickens,* 79 N. C., 654; *State v. Miller,* 93 N. C., 516; *State v. Foy,* 98 N. C., 746; *State v. Hazell,* 100 N. C., 474; *State v. Dalton,* 101 N. C., 683; *State v. Farmer,* 104 N. C., 889; *State v. Gibson,* 121 N. C., 681.    This rule of criminal pleading is recognized by the common law, and is founded upon a just regard for the rights of persons charged with crime.    Archb. Crim. Prac., 41, 42. It is not a technical refinement of the law.    Had it been,

STATE *v.* TISDALE.

it would have long since been discarded and would never have survived up to 1897, when the last opinion citing *Stamey's case* was written by the present Chief Justice.

The reason for setting forth the name of the person to whom the liquor is sold is because each sale constitutes a distinct offense, for which the offender may be punished. When the name of the vendee of the liquor is given, the particular transaction on which the indictment is founded is identified. The accused then has notice of the specific charge, and may have the benefit of the first acquittal or conviction if accused a second time of the same offense.

Judgment Arrested.

WALKER, J., concurring: It seems to me that the distinction between the sale of liquor under a general prohibitory statute, of the character of that upon which this indictment was drawn, and the like offense when the act is prohibited— for instance, near a church or other place—is simply this: That in the former there may be repeated indictments for different offenses, while in the latter the crime consists in doing the proscribed act in or near a certain place, or within a given distance of a certain locality. Where there may be numerous indictments arising out of different offenses, as where a man sells liquor in violation of the general statute, the name of the person to whom the liquor is sold should be given, by every elementary rule of criminal pleading which has been adopted, to protect the defendant from double punishment and to enable him to make his defense and to successfully plead his former conviction or acquittal, for there may be many offenses committed by the violation of the same law on different occasions. Not so, perhaps, where the offense consists in selling in a prohibited place. It makes no difference to whom the defendant sold, so that it appears that he had sold within the prohibited distance of the church or other place intended to be protected. Selling in the pro-

hibited place is the offense. The writer of this opinion is not willing, at present and without further reflection, to assent to the doctrine that, even in the latter case, the name of the purchaser should not be given, if known, because we should always be careful to safeguard the defendant against a second prosecution for the same offense, as it is abhorrent to us, living as we do under a system of laws and a Constitution which forbids double punishment, to impose two penalties for the same crime. It is contrary to the fundamental principles of the common law, to *Magna Carta* and to the Bill of Rights. Const., Art. I; *Com. v. Blood,* 4 Gray (Mass.), 31; *Capritz v. State,* 1 Md., 569; *Dorman v. State,* 34 Ala., 216. We should be careful, therefore, to see that, in administering the criminal law, whether in pleading, evidence or practice, we do not depart from this manifestly just and well-established principle. The people of this State, who are really and substantially the prosecutors in all criminal proceedings, do not ask that any man be punished, or even be exposed to punishment, twice for the same criminal act.

*Justice Bynum,* who always stated a principle of law with conciseness and vigor, in *State v. Stamey,* 71 N. C., 203, says: "The purpose of setting forth the name of the person on whom the offense has been committed is to identify the particular fact or transaction on which the indictment is founded, so that the accused may have notice of the specific charge and have the benefit of an acquittal or conviction if accused a second time." See, also, *State v. Blythe,* 18 N. C., 199; *State v. Ritchie,* 19 N. C., 29; *State v. Faucett,* 20 N. C., 107, and, in the reports of other States, *State v. Allen,* 32 Iowa, 491; *State v. Steedman,* 8 Rich. (S. C.), 312; *Dorman v. State, supra; Capritz v. State, supra; Com. v. Blood, supra.* Mr. Bishop, in his work on Statutory Crimes (Ed. of 1873), sec. 1037, classifies the courts in respect to their decisions upon this subject, and places this Court with those who have held that it is essential to a valid indictment to

state the name of the person to whom the liquor was sold. He also recognizes the distinction between the cases which I have attempted to point out in this opinion. *State v. Steedman, supra.*

No one, of course, in this particular prosecution, is seeking to punish the defendant twice for the same offense. That is palpably not the question. It is the liability to be punished hereafter upon a second prosecution and for the same act, by reason of a material defect in the bill. The distinction between the two cases is too plain for argument. And again, shall a citizen be tried hereafter by "indictment, presentment or impeachment," as required by Article I, sections 12 and 17, of the Constitution, or merely by a bill of particulars? Unhesitatingly I declare in favor of the former method, under which the freemen of England and this country have heretofore been safe against untrue and unjust accusation against them. We may soon imperil the liberty of the citizen by impairing and thereby gradually abolishing the forms of law intended for his protection. Trials are not conducted now as they were in the days of Sir Walter Raleigh. We live not under a king or a potentate, but in a democracy—the best form, we think, of all government, where every man has an equal chance, or should have, before the law, and the right, "in all criminal prosecutions, to be *informed of the accusation against him,* and to confront his accuser and witnesses with other witnesses, and to have counsel for his defense, and not be compelled to give evidence against himself, or to pay costs, jail fees or (even) necessary witness fees of the defense, unless found guilty." Constitution of the State, Art. I, sec. 11. If this had been the law of England, as it should have been, when Raleigh was called to the bar to answer the charge against him he would, perhaps, have escaped the ignominy of the block. Even the ancient forms and the old lore should not be neglected or disregarded, as we cannot well know what the law is except by what it has been, and how it has gradu-

ally developed by degrees into a perfect and more liberal system. But however, in our rapid progress towards a more sensible administration of justice, we may have regarded mere forms of procedure, we should not, by a too liberal construction, jeopardize the liberty of the citizen, and especially should we not deliberately violate his constitutional right and privilege.

CLARK, C. J., dissenting: In Black on Intoxicating Liquors, sec. 464, where the precedents are collected, the overwhelming weight of authority is that, in indictments for the illegal sale of liquor, it is not necessary to name the persons to whom it was sold. In this State, in *State v. Faucett,* 20 N. C., 239, it was held that the name of the purchaser must be charged, because, said *Daniel, J.,* the words of the statute (1 R. S., ch. 34, sec. 81) prescribed a penalty for "each and every offense." This case has been followed only by *State v. Stamey,* 71 N. C., 202. These two cases have never been cited in any other case on *this point.* They have been cited on other points.

On the other hand, in *State v. Muse,* 20 N. C., 463 (in same volume with *State v. Faucett, supra*), it was held that, in indictments for selling liquor near a church, it was not necessary to name the vendee, because, says *Ruffin, C. J.,* the statute does not give a penalty for each and every offense. This last case is exactly in point, for our present statute is like the wording of the statute in this last case, and differs from that in *State v. Faucett,* in the same particular which *Chief Justice Ruffin* there pointed out. The statute under which the defendant is indicted is Revisal, sec. 2062: "No person shall sell or otherwise dispose of, for gain, any spirituous, vinous or malt liquors, or intoxicating bitters, without first obtaining, as provided by law, a license so to do."

This case, therefore, falls exactly under *State v. Muse,* and not under *State v. Faucett.* The words "for each and every

offense" are not in the statute now, which is the distinction both *Judge Daniel* and *Chief Justice Ruffin* made in those cases.

The only other reason given in *State v. Faucett, supra,* is that the defendant may be able to use the judgment as an estoppel when again indicted. Yet the same case (*State v. Faucett*) holds that, if the sale is charged to have been made "to persons to the jurors unknown," the indictment is valid. So, if the sale is charged, as in this case, merely "to divers persons," the indictment is now invalid; but if the sale is charged to have been made to "divers persons to the jurors unknown," the indictment is conceded to be good. It is impossible that one of these forms should be more informing to the defendant, or to the court, than the other.

Revisal, sec. 3254, forbids an indictment to be quashed, or judgment stayed thereon, "by reason of any informality or refinement, if in the bill sufficient matter appears to enable the court to proceed to judgment." It is clear that, if there is sufficient matter to enable the court to proceed to judgment in one case, there is in the other. The mere adding after "divers persons" the words "to jurors unknown" cannot give the trial court any additional light when proceeding to judgment. The difference is a "refinement" which the statute requires to be disregarded, and there is no better time to do so than now and in this case.

*State v. Faucett,* 20 N. C., 107, was decided far back, when such refinements still lingered occasionally in the administration of the original law, and *State v. Stamey,* 71 N. C., 202, was so held merely to follow the other case. It would be better not to lengthen the line by adding the present case to the other two. It is like the expressions "with force and arms," "against the form of the statute," "against the peace and dignity of the State," and the like, which at one time were considered sacred and indispensable, and in some undefinable way connected with the maintenance of our liber-

ties, and whose omission from an indictment vitiated a verdict against the guiltiest criminal.    *State v. Harris,* 106 N. C., 687, 689: The growing enlightenment of the age has given a clearer conception, both to the Legislature and to the courts, that a trial for crime should proceed solely upon the merits of the case, disregarding all informalities and refinements.    In former days, in an indictment for homicide, the nature and size of the wound had to be charged, the manner in which it was inflicted, the value of the weapon, and if a firearm was used it was gravely charged that it was loaded with powder and shot, and that, by the ignition of the powder, "the leaden bullets aforesaid were propelled in and against the left side of A" aforesaid, and many similar details, taking up two to four pages of foolscap.    Now, three or four lines state the charge in a clear, businesslike way, and no prisoner has ever suffered injustice thereby.    If details are required by the prisoner for information, he can have a bill of particulars.    There is no reason why the "refinement" of quashing a bill for selling liquor should be allowed for not adding to "divers persons" the further words "to jurors unknown," when the latter allegation is not required to be proven; still less ought the judgment to be arrested, as here, when objection for the omission to use those words was not made till after trial and verdict.

As was said in *State v. Harris,* 106 N. C., 689, "To sustain obsolete technicalities in indictments will be to waste the time of the courts, needlessly increase their expense to the public, multiply trials, and in some instances would permit defendants to evade punishment who could not escape upon a trial on the merits.    If it has not the last-mentioned result, it is no advantage to defendants to resort to technicalities, and if it has such effect the courts should repress, as they do, a reliance upon them."

Here, upon the evidence, the defendant was guilty, beyond question.    The jury have so found.    The Judge states that,

in defiance of law, the defendant continued to sell after in-dictment and even after verdict. He feared the Federal courts enough to pay the United States tax on his business. Why should the State courts reward his contempt of State process by turning him loose, unwhipped of justice, because of the mere omission of the words "unknown to the jurors," which could have been of no aid to the court in proceeding to judgment, nor could their omission be any possible detriment to the just rights of the defendant.

Instead of following an ancient decision, based on a differing statute, and which is contrary to the overwhelming weight of authority in other jurisdictions, it seems to me, we should obey the statute (Revisal, sec. 3254), which was passed to prevent just such miscarriages of justice, and to follow the present statute (Revisal, sec. 2062), which is like that upon which the Court, in *State v. Muse, supra,* sustained an indictment which, like this, did not charge the names of the vendees.

The courts should keep up with legislation. The law should express the best sentiment of the age. It should move, because all the world beside is moving, for, as Galileo said, *"E pur si muove."* We should move up abreast of our age, and not take our seats by the abandoned camp fires of a generation that has gone before.

No one is seeking to punish this defendant twice. No such question is before us. The difficulty is to punish him once for an offense of which he has been duly convicted, upon a trial in which there was no valid objection taken. He is seeking to escape judgment upon the attenuated technical ground that the indictment charged the sales to have been made by him to "divers persons" instead of to "divers persons unknown." He might have had this information if he had asked at the trial for a bill of particulars as to the names of the vendees. He made no objection on that score at the trial. He does not show that he has received any detriment. Revisal, sec. 3254, provides that no bill shall be quashed nor

judgment stayed by reason of any informality or refinement.
It was passed for just such cases as this.     Neither *Magna
Carta,* the English Bill of Rights, nor the common law can
have any effect to prohibit or restrict the legislative power of
the people of North Carolina, except in so far as they have
been expressly placed by our people in the words of our Con-
stitution.     In indictments for false pretense (Revisal, sec.
3432) and in some other offenses the statute provides that the
ownership of the property need not be charged; and cer-
tainly the Legislature could provide, and has intended, that
when there is a mere technical omission (as here, of the word
"unknown") in an indictment, not objected to at the trial,
and which is not shown to have worked any detriment, the
trial, verdict and judgment shall not be vitiated by such
omission.                                             .