IN THE SUPREME COURT OF NORTH CAROLINA

No. 527A12

FILED 7 MARCH 2014

STATE OF NORTH CAROLINA

v.

ERIC STEVEN JONES and JERRY ALVIN WHITE

1.      **Identity Theft — sufficient evidence of intent**

The trial court did not err by denying defendant Jones's motion to dismiss the charge of identity theft where Jones argued that the State failed to prove that he possessed the specific intent necessary for identity theft. Based upon evidence that Jones had fraudulently used other individuals' credit card numbers, a reasonable juror could have inferred that Jones possessed Rini's, Payton's, Daly's, and Batchelor's credit card numbers with the intent to fraudulently represent that he was those individuals for the purpose of making financial transactions in their names. Although Jones contended that the State was required to prove that he intended to represent that he was Rini, Payton, Daly, and Batchelor and not some other individual or an authorized user, it cannot be concluded that the Legislature intended for individuals to escape criminal liability simply by stating or signing a name that differs from the cardholder's name.

2.      **False Pretenses — indictments — not sufficiently specific — property obtained — "services"**

Indictments were insufficient to allege the crime of obtaining property by false pretenses and the trial court property dismissed those charges where the indictments alleged that defendant Jones obtained "services" from Tire Kingdom and Maaco. Like the terms "money" or "goods and things of value," the term "services" does not describe with reasonable certainty the property obtained by false pretenses.

3.      **Identity Theft — indictments — insufficient — name of recipient**

The State must allege the name of the recipient or that the recipient's name is unknown in charging the crime of trafficking in stolen identities. Because the State failed to do so here, the indictments were insufficient to support defendant White's convictions for trafficking in stolen identities and

the trial court properly dismissed those charges.

Justice MARTIN concurring part and dissenting in part.
Justice HUDSON concurring in part and dissenting in part.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 734 S.E.2d 617 (2012), finding no error in a judgment and orders entered on 7 September 2011 by Judge Robert C. Ervin in Superior Court, Mecklenburg County. On 24 January 2013, the Supreme Court allowed petitions by the State and defendant Jones for discretionary review of additional issues. Heard in the Supreme Court on 8 May 2013 by special session in the Old Chowan County Courthouse (1767) in the Town of Edenton pursuant to N.C.G.S. § 7A-10(a).

*Roy Cooper, Attorney General, by Kimberly N. Callahan and Joseph L. Hyde, Assistant Attorneys General, for the State-appellant/appellee.*

*Staples S. Hughes, Appellate Defender, by Andrew DeSimone, Assistant Appellate Defender, for defendant-appellee/appellant Eric Steven Jones.*

*C. Scott Holmes for defendant-appellee Jerry Alvin White.*

JACKSON, Justice.

In this appeal we consider whether the trial court properly denied defendant Eric Steven Jones's motion to dismiss the charge of identity theft, and whether the trial court properly dismissed indictments charging Jones with obtaining property

by false pretenses and defendant Jerry Alvin White with trafficking in stolen identities. We conclude that the State presented sufficient evidence to support the jury's determination that Jones possessed the specific intent to commit identity theft. We further conclude that the indictments against Jones and White were insufficient to support the resulting convictions against Jones for obtaining property by false pretenses and against White for trafficking in stolen identities. Accordingly, the decision of the Court of Appeals is affirmed.

In the early morning hours of 2 June 2010, Officer Steven Maloney of the Charlotte-Mecklenburg Police Department initiated a traffic stop of a silver Hyundai Accent that was a suspect vehicle in a financial transaction card theft case. Jones, the driver, was unable to produce a driver's license or vehicle registration card. During a consensual search of the vehicle, Officer Maloney found a Maaco work order listing James Coleman as the customer and two bags of marijuana. Officer Maloney placed Jones under arrest and conducted a search incident to the arrest. In Jones's wallet, Officer Maloney found, *inter alia*, pieces of paper with the names, addresses, and credit card information of John Rini, James Payton, Sean Daly, and Charles Batchelor.

Subsequent police investigation revealed that each of these individuals had stayed at The Blake Hotel in Charlotte in May 2010. Each man had been checked into the hotel by White and had provided a credit card to him for payment. White

confessed that he had written down the names, addresses, and credit card numbers of Payton, Daly, and Batchelor, and had provided this information to another individual; however, White denied recording Rini's information. On various dates in May 2010, unauthorized charges were made on Rini's, Payton's, and Batchelor's credit cards.

Further investigation revealed that on 18 May 2010, an unauthorized purchase was made with Melanie Wright's credit card for the installation of four new tires and rims, an alignment, wiper blades, and brake services for a Hyundai Accent with the same vehicle identification number as the car Jones was driving when arrested. The work order was made under the name "Payton James" or "James Payton," and the credit card receipt was signed with the name "James Payton." On 28 May 2010, Jones paid for paint materials and service, body supplies and labor, and "sublet/towing" of the Hyundai Accent by Maaco with Mary Berry's credit card. This work order was made under the name "James Coleman" and Jones signed the credit card receipt as "Coleman J."

On 7 September 2010, the grand jury returned true bills of indictment charging Jones with four counts of trafficking in stolen identities, two counts of obtaining property by false pretenses, and one count of identity theft. The grand jury indicted White for four counts of trafficking in stolen identities. Jones and White were tried jointly during the 29 August 2011 criminal session of Superior

Court in Mecklenburg County. At the close of the State's evidence, defendants moved to dismiss all charges on two grounds: (1) that the indictments were fatally flawed; and (2) that the State's evidence was insufficient. The trial court denied defendants' motions as to insufficiency of the evidence, but deferred ruling on the motions based upon the indictments. Defendants did not present any evidence, and both renewed their motions to dismiss at the close of the evidence.

The jury found Jones not guilty of trafficking in stolen identities but guilty of two counts of obtaining property by false pretenses and one count of identity theft. The jury found White guilty of all four counts of trafficking in stolen identities. The trial court denied Jones's motion to dismiss the charge of identity theft. The trial court then dismissed the charges against Jones for obtaining property by false pretenses and all charges against White for trafficking in stolen identities on the basis that the indictments were "insufficient as a matter of law."

Jones appealed his conviction for identity theft to the Court of Appeals, arguing, *inter alia*, that the State failed to prove that he possessed the specific intent necessary to be convicted of identity theft. *State v. Jones*, ___ N.C. App. ___, ___, 734 S.E.2d 617, 621 (2012). The State appealed the dismissals of the charges against Jones for obtaining property by false pretenses and against White for trafficking in stolen identities. *Id.* at ___, 734 S.E.2d at 621.

The Court of Appeals found no error in the trial court's denial of Jones's motion to dismiss the charge of identity theft. *Id.* at ___, 734 S.E.2d at 622. The court noted that identity theft occurs when a person " 'knowingly obtains, possesses, or uses identifying information of another person, living or dead, *with the intent to fraudulently represent that the person is the other person* for the purposes of making financial or credit transactions in the other person's name.' " *Id.* at ___, 734 S.E.2d at 621 (quoting N.C.G.S. § 14-113.20(a) (2011) (emphasis added)). The court further observed that fraudulent intent may be established "based upon a defendant's conduct or actions." *Id.* at ___, 734 S.E.2d at 621. The court determined that evidence that Jones used the credit card numbers to make purchases and payments on his own behalf when he was not the cardholder or an authorized user was sufficient to raise a reasonable inference of misrepresentation. *Id.* at ___, 734 S.E.2d at 622. The court stated, "[W]hen one presents a credit card or credit card number as payment, he is representing himself to be the cardholder or an authorized user thereof. . . . No verbal statement of one's identity is required, nor can the mere stating of a name different from that of the cardholder negate the inference of misrepresentation." *Id.* at ___, 734 S.E.2d at 622. Therefore, the Court of Appeals concluded that there was sufficient evidence of Jones's intent to commit identity theft and that the trial court properly denied Jones's motion to dismiss the identity theft charge. *Id.* at ___, 734 S.E.2d at 622.

The Court of Appeals also found no error in the trial court's dismissal of the charges against Jones for obtaining property by false pretenses. *Id.* at ___, 734 S.E.2d at 626. The court stated that in charging the crime of obtaining property by false pretenses, " 'it is the general rule that the thing obtained . . . must be described with reasonable certainty, and by the name or term usually employed to describe it.' " *Id.* at ___, 734 S.E.2d at 627 (quoting *State v. Ledwell*, 171 N.C. App. 314, 317, 614 S.E.2d 562, 565 (2005) (alteration in original)). Citing examples of insufficient descriptions, the court concluded that alleging that Jones obtained "services" from Tire Kingdom and Maaco, "without even the most general description of the services or their monetary value," was "plainly insufficient" to sustain the charges. *Id.* at ___, 734 S.E.2d at 627.

The Court of Appeals was divided on the dismissal of the charges against White for trafficking in stolen identities. Relying upon a long line of cases involving illegal trafficking in various substances, the majority below stated that " 'it is necessary . . . to allege in the bill of indictment the name of the person to whom the [transfer] was made or that his name is unknown, unless some statute eliminates that requirement.' " *Id.* at ___, 734 S.E.2d at 627 (second alteration in original) (quoting *State v. Bissette*, 250 N.C. 514, 517, 108 S.E.2d 858, 861 (1959)). Finding no language in either section 14-113.20 or section 14-113.20A of the North Carolina General Statutes eliminating the common law requirement, the majority concluded that the trial court properly dismissed the indictments for failure to name the

recipient of the identifying information or to state that the recipient's name was unknown. *Id.* at ___, 734 S.E.2d at 628. The majority stated that naming the recipient was "particularly crucial to avoid the risk of double jeopardy" in cases involving trafficking in stolen identities because identifying information theoretically "can be trafficked an infinite number of times to an infinite number of recipients." *Id.* at ___, 734 S.E.2d at 628. Therefore, in order to give a defendant sufficient notice of the incidence of trafficking for which he must present a defense, the majority held that an indictment for trafficking in stolen identities "must specify the identity of the recipient." *Id.* at ___, 734 S.E.2d at 628.

The dissent below agreed with the majority that the common law requires naming the recipient or stating that the recipient is unknown in an indictment for trafficking in illicit substances. *Id.* at ___, 734 S.E.2d at 628 (Elmore, J., concurring in part and dissenting in part). Nonetheless, the dissenting judge would have held that the common law rule is inapplicable to the distinct crime of trafficking in stolen identities. *Id.* at ___, 734 S.E.2d at 629. The dissenting judge noted that, unlike illicit substances, the items listed as "identifying information" in section 14-113.20(b) have "independent identifying characteristics which can be specifically described in an indictment so as to put the accused on notice regarding the identifying information he allegedly sold or transferred." *Id.* at ___, 734 S.E.2d at 629. The dissenting judge further noted that identifying information often is stored on-line and can be easily accessed without authorization and transferred to another

in an "anonymous vacuum," which would result in most indictments stating that the transferee's identity is "unknown." *Id.* at ___, 734 S.E.2d at 629. Given the "unique nature" of trafficking in stolen identities, the dissenting judge reasoned that imposing the common law rule is short-sighted and unnecessary. *Id.* at ___, 734 S.E.2d at 629. Turning to the instant case, the dissenting judge would have held that the indictment sufficiently apprised White of the conduct that was the subject of the accusation, and therefore, was not fatally defective. *Id.* at ___, 734 S.E.2d at 629.

The State filed its appeal of right based upon the dissenting opinion. We allowed the State's petition for discretionary review on the issue of the indictments against Jones for obtaining property by false pretenses and Jones's petition for discretionary review on the issue of his motion to dismiss the charge of identity theft.

[1] Jones argues that the State failed to prove that he possessed the specific intent necessary to be convicted of identity theft, and therefore, the trial court should have granted his motion to dismiss. We disagree. The standard of review regarding motions to dismiss is well settled:

> "When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines whether the State presented substantial evidence in support of each element of the charged offense. Substantial evidence is relevant evidence that a reasonable person might accept as

> adequate, or would consider necessary to support a particular conclusion. In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. . . . [I]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied."

*State v. Hunt*, 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012) (quoting *State v. Abshire*, 363 N.C. 322, 327-28, 677 S.E.2d 444, 449 (2009) (citations and quotation marks omitted)). Here the indictment charged that Jones "did knowingly obtain or possess the identifying information pertaining to three or more separate persons with [fraudulent intent] . . . , to wit: [Jones] possessed the credit card number[s] of . . . Rini, . . . Batchelor, . . . Payton, . . . and . . . Daly." It is undisputed that Jones possessed Rini's, Batchelor's, Payton's, and Daly's credit card numbers. At issue is whether the evidence was sufficient to support an inference that he did so with the intent to "fraudulently represent that [he] [wa]s [Rini, Batchelor, Payton, or Daly] for the purposes of making financial or credit transactions in [those individuals'] name[s]." N.C.G.S. § 14-113.20(a) (2013).

"[I]ntent is seldom provable by direct evidence and ordinarily must be proved by circumstances from which it may be inferred." *State v. Hardy*, 299 N.C. 445, 449, 263 S.E.2d 711, 714 (1980) (citing *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974)). Moreover, when "a specific mental intent or state is an essential

element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused." *State v. McClain*, 240 N.C. 171, 175, 81 S.E.2d 364, 366 (1954) (citations omitted). Here the evidence showed that using the name James Coleman, Jones used Mary Berry's credit card number to obtain various services at Maaco. Additionally, the evidence tended to show that Jones, using the name James Payton, used Melanie Wright's credit card number to obtain various items and services at Tire Kingdom. Although these actions are not the basis of the identity theft charge, this evidence tends to establish Jones's mental intent in possessing Rini's, Payton's, Daly's, and Batchelor's credit card numbers. Based upon the evidence that Jones had fraudulently used other individuals' credit card numbers, a reasonable juror could infer that Jones possessed Rini's, Payton's, Daly's, and Batchelor's credit card numbers with the intent to fraudulently represent that he was those individuals for the purpose of making financial transactions in their names. It was then " 'for the [jurors] to decide whether the facts, taken singly or in combination, satisf[ied] them beyond a reasonable doubt that . . . defendant [wa]s actually guilty [of identity theft].' " *State v. Trull*, 349 N.C. 428, 447, 509 S.E.2d 178, 191 (1998) (first alteration in original) (quoting *State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999).

Jones argues that the Maaco and Tire Kingdom purchases actually negate an intent to commit identity theft because he used names that were different from the names of the credit card owners. Specifically, Jones contends that the words "with the intent to fraudulently represent that the person is the other person" require the State to prove that he intended to represent that he was Rini, Payton, Daly, and Batchelor, and not some other individual or an authorized user. N.C.G.S. § 14-113.20(a).

"We generally construe criminal statutes against the State. However, this does not require that words be given their narrowest or most strained possible meaning. A criminal statute is still construed utilizing 'common sense' and legislative intent." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (citations omitted). "[W]here a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, . . . the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Id.* (citations and quotation marks omitted). We cannot conclude that the Legislature intended for individuals to escape criminal liability simply by stating or signing a name that differs from the cardholder's name. Such a result would be absurd and contravene the manifest purpose of the Legislature to criminalize fraudulent use of identifying information. Because the State's evidence was sufficient to raise an inference of Jones's fraudulent intent in

possessing Rini's, Payton's, Daly's, and Batchelor's credit card numbers, the trial court did not err by denying Jones's motion to dismiss the charge of identity theft.

**[2]**     In its appeal the State first argues that the trial court erred by dismissing the indictments against Jones for obtaining property by false pretenses.   An indictment must contain

> "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation."

*State v. Cronin*, 299 N.C. 229, 234, 262 S.E.2d 277, 281 (1980) (quoting N.C.G.S. § 15A-924(a)(5) (1978)).[1]  The purpose of this requirement is:

> "(1) [to provide] such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case."

*Id.* at 235, 262 S.E.2d at 281 (quoting *State v. Greer*, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953)).   "[A]n indictment couched in the language of the statute is generally sufficient to charge the statutory offense."  *State v. Palmer*, 293 N.C. 633, 638, 239 S.E.2d 406, 410 (1977).  But

---

[1] The language of the statute has remained unchanged as of the date of this opinion.

"[i]f the statutory words fail to [charge the essential elements of the offense in a plain, intelligible, and explicit manner,] they must be supplemented by other allegations which so plainly, intelligibly and explicitly set forth every essential element of the offense as to leave no doubt in the mind of the accused and the court as to the offense intended to be charged."

*State v. Cook*, 272 N.C. 728, 730, 158 S.E.2d 820, 822 (1968) (citations and internal quotation marks omitted).

Section 14-100(a) of the North Carolina General Statutes defines the elements of obtaining property by false pretenses as (1) "knowingly and designedly by means of any kind of false pretense"; (2) "obtain[ing] or attempt[ing] to obtain from any person . . . any money, goods, property, services, chose in action, or other thing of value"; (3) "with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value." N.C.G.S. § 14-100(a) (2013). Additionally, "[i]t is the general rule that the thing obtained by the false pretense . . . must be described with reasonable certainty, and by the name or term usually employed to describe it." *State v. Gibson*, 169 N.C. 380, 383, 169 N.C. 318, 320, 85 S.E. 7, 8 (1915) (citations omitted). This Court has not had occasion to address this issue recently, but consistently has held that simply describing the property obtained as "money," *State v. Reese*, 83 N.C. 637, 640 (1880), or "goods and things of value," *State v. Smith*, 219 N.C. 400, 401, 14 S.E.2d 36, 36 (1941), is insufficient to allege the crime of obtaining property by false pretenses.

Here the indictments alleged that Jones obtained "services" from Tire Kingdom and Maaco. Like the terms "money" or "goods and things of value," the term "services" does not describe with reasonable certainty the property obtained by false pretenses. Moreover, "services" is not the name or term usually employed to adequately describe the tires, rims, wiper blades, tire and rim installation, wheel alignment, and brake services Jones allegedly obtained from Tire Kingdom, or the paint materials and service, body supplies and labor, and "sublet/towing" services Jones obtained from Maaco. *Cf. State v. Perkins*, 181 N.C. App. 209, 215, 638 S.E.2d 591, 595 (2007) (holding that an indictment that alleged, *inter alia*, the defendant had "attempted to obtain BEER AND CIGARETTES from FOOD LION . . . BY MEANS OF USING THE CREDIT CARD AND C[H]ECK CARD" of a named individual was sufficient). Accordingly, we hold that the indictments were insufficient to allege the crime of obtaining property by false pretenses and that the trial court property dismissed those charges.

**[3]** The State also argues that the trial court erred by dismissing the indictments against White for trafficking in stolen identities. In *Bissette*, we stated that "[w]here a sale is prohibited, it is necessary, for a conviction, to allege in the bill of indictment the name of the person to whom the sale was made or that his name is unknown, unless some statute eliminates that requirement." 250 N.C. at 517, 108 S.E.2d at 861. We have extended the *Bissette* rule to apply to a statute prohibiting the possession or sale of narcotics. *State v. Bennett*, 280 N.C. 167, 169, 185 S.E.2d

147, 149 (1971). Therefore, it is a logical extension to also apply the *Bissette* rule to the crime of trafficking in stolen identities. Section 14-113.20A(a) of the North Carolina General Statutes states that "[i]t is unlawful for a person to sell, transfer, or purchase the identifying information of another person with the intent to commit identity theft, or to assist another person in committing identity theft, as set forth in [N.C.]G.S. 14-113.20." N.C.G.S. § 14-113.20A(a) (2013). Nothing in section 14-113.20A eliminates the common law requirement that the indictment state either the name of the recipient or that the recipient's name is unknown. Accordingly, the State was required to allege in the indictments the name of the recipient of the identifying information or that the recipient's name was unknown.

In addition, we note that "[t]he reason for setting forth the name of the [recipient] is because each sale [or transfer] constitutes a distinct offense for which the offender may be punished." *State v. Tisdale*, 145 N.C. 305, 307, 145 N.C. 422, 425, 58 S.E.2d 998, 999 (1907). Naming the recipient notifies the accused of "the particular transaction on which the indictment is founded" and gives the accused "the benefit of the first acquittal or conviction if accused a second time of the same offense." *Id.* at 425, 58 S.E.2d at 999-1000. This reasoning is even more persuasive in the context of trafficking in stolen identities because a single item of identifying information can be transferred to countless recipients. The State argues that the independent identifying characteristics of identifying information are sufficient to put a defendant on notice of the particular transaction on which the indictment is

founded.[2] However even if a defendant is put on notice of the particular identifying information he is alleged to have transferred, he will not know the particular *transaction* with which he is being charged. We hold that the State must allege the name of the recipient or that the recipient's name is unknown in charging the crime of trafficking in stolen identities. Because the State failed to do so here, the indictments were insufficient to support White's convictions for trafficking in stolen identities and the trial court properly dismissed those charges.

For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.

---

[2] Although social security numbers and digital signatures may contain "unique identifiers," *State v. Jones*, ___ N.C. ___, ___, ___ S.E.2d ___, ___ (2014) (527A12) (Martin, J., dissenting in part), section 14-113.20(b) lists other examples of "identifying information" that do not share the same type of independent identifying characteristics, such as passwords and "[a]ny other numbers or information that can be used to access a person's financial resources." N.C.G.S. § 14-113.20(b)(10), (13).

Justice MARTIN concurring in part and dissenting in part.

A jury found defendant Jerry White guilty of four counts of trafficking in stolen identities. The majority today affirms the dismissal of all four charges by extending a common law rule that has never before been applied to this statutory offense. This extension of the common law rule runs counter to our long-standing requirements for indictments and furthers neither the interests of defendants nor the administration of justice. Accordingly, I respectfully dissent to that portion of the majority's opinion.

The majority's decision fails to properly consider the standards for legally sufficient indictments. Indictments must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." N.C.G.S. § 15A-924(a)(5)(2013). The statutory requirements of N.C.G.S. § 15A-924(a)(5) fulfill a long-standing dual purpose: "to give the defendant notice of the charge against him to the end that he may prepare his defense and to be in a position to plead [double jeopardy] in the event he is again brought to trial for the same offense . . . [and] to enable the court to know what judgment to pronounce in case of conviction." *State v. Burton*, 243 N.C. 277, 278, 90 S.E.2d 390, 391 (1955).

In *State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68 (1994), this Court considered an issue nearly identical to the one now before us, involving an indictment for

burglary. While the common law had required burglary indictments to specify which felony the defendant intended to commit, we held, "Such cases were decided prior to the enactment of N.C.G.S. § 15A-924(a)(5) . . . and are no longer controlling on this issue." *Id.* at 279, 443 S.E.2d at 73. The former rule was "drawn from the ancient strict pleading requirements of the common law while the pleading requirements of the Criminal Procedure Act are more liberal." *Id.* at 280, 443 S.E.2d at 74 (citation and internal quotation marks omitted). The indictment statute, N.C.G.S. § 15A-924, therefore "supplanted prior [common] law." *Id.* at 279, 443 S.E.2d at 73. The new statutory paradigm—the same that is in place today— requires indictments to " 'charge[ ] the offense . . . in a plain, intelligible, and explicit manner and contain[ ] sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent prosecution for the same offense.' " *Id.* at 281, 443 S.E.2d at 74 (second alteration in original) (citation omitted). The Court accordingly held that "[t]he indictment for first-degree burglary in the present case therefore satisfie[d] the requirements of N.C.G.S. § 15A-924(a)(5), notwithstanding the fact that it [did] not" comply with the prior common law requirement of specifying the felony the defendant intended to commit. *Id.* The same reasoning applies to the case before us.

"[A]n indictment couched in the language of the statute is generally sufficient to charge the statutory offense." *State v. Palmer*, 293 N.C. 633, 638, 239 S.E.2d 406, 410 (1977). As long as the indictment "express[es] the charge against the defendant

in a plain, intelligible, and explicit manner . . . [it] shall not be quashed." N.C.G.S. § 15-153 (2013). Pursuant to N.C.G.S. § 15A-925, when a defendant believes he needs more information to mount his preferred defense, he "may request a bill of particulars to obtain information to supplement the facts contained in the indictment." *State v. Randolph*, 312 N.C. 198, 210, 321 S.E.2d 864, 872 (1984). "If any or all of the items of information requested are necessary to enable the defendant adequately to prepare or conduct his defense, the court must order the State to file and serve a bill of particulars." N.C.G.S. § 15A-925(c) (2013). Indictments receive a liberal construction and quashing indictments is not favored. *State v. Russell*, 282 N.C. 240, 245, 192 S.E.2d 294, 297 (1972) (citations omitted). Moreover, "it is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981) (citation omitted).

In this case, White's indictment for trafficking in stolen identities mirrored the language of the controlling statute. The indictment not only alleged the precise statutory language but also included the names of White's victims, the dates of the sales, the county in which the sales occurred, and the type of identifying information being trafficked. Yet the majority has seen fit to void that indictment

based on a common law rule that has never been—and should not be—extended to trafficking in stolen identities.

The rule applied by the majority because of its "logical extension" to this case was formally announced in *State v. Bissette*, 250 N.C. 514, 108 S.E.2d 858 (1959), but it originated much earlier. The Court's earliest application of the rule requiring the State to allege the name of the recipient of an illicit sale was in the unlawful sale of alcohol, and its purpose was "to identify the particular fact or transaction on which the indictment is founded." *State v. Stamey*, 71 N.C. 202, 203 (1874); *see also State v. Pickens*, 79 N.C. 652 (1878); *State v. Blythe*, 18 N.C. (1 Dev. & Bat. Eq.) 199 (1835). *Bissette* extended that rule to the unlawful sale of agricultural seeds. 250 N.C. at 517-18, 108 S.E.2d at 861. Later, the Court again extended the rule to the unlawful sale of narcotics. *State v. Bennett*, 280 N.C. 167, 169, 185 S.E.2d 147, 149 (1971).

The commonality among all these cases is the inherent fungibility of the substances being unlawfully sold. Differentiating between two jugs of malt liquor, two sacks of tobacco seed, or two baggies of cocaine is nearly impossible. It was this lack of differentiation that raised the concern of multiple prosecutions for the same transaction. Because the goods themselves could not be used to specify which unlawful transaction was the basis for prosecution, this Court substituted a different identifying element, concluding, "When the name of the vendee of the

liquor is given, the particular transaction on which the indictment is founded is identified." *State v. Tisdale*, 145 N.C. 422, 425, 58 S.E. 998, 999-1000 (1907).

Stolen identities, however, are not fungible goods. The inherent nature of the information regulated by N.C.G.S. §§ 14-113.20 and 14-113.20A—social security numbers, drivers license numbers, bank account numbers, debit and credit card numbers, digital signatures, biometric data, etc.—is that they are unique identifiers. The uniqueness and non-fungibility of these data are what make them valuable. When the State alleges trafficking in stolen identities, it must allege specific information sufficient to put defendant on notice when it "asserts facts supporting every element of [the] criminal offense and the defendant's commission thereof." N.C.G.S. § 15A-924(a)(5). Alleging the specific credit card or passport number that has been sold necessarily limits the possible transactions for prosecution. Therefore, logic does not require the extension of the *Bissette* rule to the offense of trafficking in stolen identities.

While the majority uses the potential for repetitious and anonymous sales as a reason to enforce the extra-statutory *Bissette* rule, in reality it shows the harmful consequences of extending the rule. As noted by the majority, stolen identifying information can be sold many times over to anonymous purchasers, creating a situation (not at issue here) in which a defendant has sold someone else's identifying information so many times that he does not know to which sale the indictment is referring. While alleging the recipient may provide additional notice

to the defendant, compliance with the *Bissette* rule may be accomplished either by alleging "the name of the person to whom the sale was made" or that "the purchaser was in fact unknown." *Bissette*, 250 N.C. at 517-18, 108 S.E.2d at 861 (citations omitted). The State can thus comply with this extra-statutory common law rule without providing any useful information to the defendant. Yet under the majority's rule, failure to include this statement is grounds for quashing the indictment and finding a jurisdictional defect. This result furthers neither defendant's desire for notice of his alleged crimes nor the State's interest in pursuing violations of our criminal code. The *Bissette* rule simply is poorly tailored to this uniquely twenty-first century criminal offense.

As in *Worsley*, the passage of N.C.G.S. § 15A-924 supplanted the prior common law requirement. The indictment here charged the offense "in a plain, intelligible, and explicit manner" that "inform[ed] the defendant of the charge against him with sufficient certainty to enable him to prepare his defense." *Worsley*, 336 N.C. at 281, 443 S.E.2d at 74 (citations and quotation marks omitted).

The decision to extend or limit common law rules is rooted in the courts' duty "to reflect the spirit of their times and discard legal rules when they serve to impede society rather than to advance it." *Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 893 (1998) (citation and quotation marks omitted). The State suffers a harsh penalty for flawed indictments—complete dismissal of its case. The Criminal Procedure Act was "designed to remove from our law unnecessary technicalities

which tend to obstruct justice." *State v. Freeman*, 314 N.C. 432, 436, 333 S.E.2d 743, 746 (1985). Accordingly, when determining whether indictments are fatally flawed, we apply N.C.G.S. § 15A-924 and decline to "engraft additional unnecessary burdens upon the due administration of justice." *Id.* The common law "is not inflexible, and therefore we will not hesitate to abandon a rule which has resulted in injustices, whether it be criminal or civil." *Nelson*, 349 N.C. at 632, 507 S.E.2d at 893 (citation omitted). The indictment in this case reasonably put White on notice of the transactions for which he was being prosecuted. It contained "plain and concise factual statement[s] supporting every element of [the] criminal offense[s] with sufficient precision to clearly apprise the defendant of the conduct which [was] the subject of the accusation." *Freeman*, 314 N.C. at 436, 333 S.E.2d at 746. I would not quash this indictment based on a technical pleading requirement that this Court now imposes for the first time. Accordingly, I respectfully concur in part and dissent in part.

Justice NEWBY joins in this opinion.

Justice HUDSON concurring in part and dissenting in part.

While I agree with the majority that the trial court properly dismissed the obtaining property by false pretenses charges against defendant Jones and the trafficking in stolen identities charges against defendant White, I believe the trial

court erred in denying Jones's motion to dismiss the charge of identity theft. Accordingly, I respectfully dissent from that portion of the majority opinion.

The crime of identity theft requires that a defendant "knowingly obtain[ ], possess[ ], or use[ ] identifying information of another person, living or dead, with the *intent to fraudulently represent that the person is the other person* for the purposes of making financial or credit transactions in the other person's name, to obtain anything of value, benefit, or advantage, or for the purpose of avoiding legal consequences." N.C.G.S. § 14-113.20(a) (2013) (emphasis added). Here defendant Jones argued that the State had not presented any evidence that he had acted with the intent of representing that he was the person named on the credit cards; in fact, as noted by the majority, defendant Jones pointed out that he specifically did not sign the transactions at either Maaco or Tire Kingdom with the names on the credit cards. In rebutting this argument, the majority states that it "cannot conclude that the Legislature intended for individuals to escape criminal liability simply by stating or signing a name that differs from the cardholder's name. Such a result would be absurd and contravene the manifest purpose of the Legislature to criminalize fraudulent use of identifying information."

The majority here seems to overlook the other statutes besides the identity theft statute that "criminalize fraudulent use of identifying information"; an offender could be charged with one of these, which would easily avoid the result the majority fears. Most relevant here, N.C.G.S. § 14-113.13 provides in part:

*HUDSON, J., concurring in part and dissenting in part*

(a) A person is guilty of financial transaction card fraud when, with intent to defraud the issuer, a person or organization providing money, goods, services or anything else of value, or any other person, he

. . . .

   (2) Obtains money, goods, services, or anything else of value by:
      a. Representing without the consent of the cardholder that he is the holder of a specified card; or
      b. Presenting the financial transaction card without the authorization or permission of the cardholder . . . .

*Id.* § 14-113.13 (2013). Unlike the crime of identity theft addressed in section 14-113.20, financial transaction card fraud does not require that the defendant represent that he is the other person, it is instead enough that he represents that he is an authorized user of the card. *Id.* § 14-113.13(a)(2)(b). If we read out of the identity theft statute the requirement that the defendant act "with the intent to fraudulently represent that the person is the other person," there is little to no difference between identity theft and financial transaction card fraud. Because I do not see our task as rewriting this statute, and because our doing so cannot be what the legislature intended, I respectfully dissent.

Given the above, I would hold that the State failed to present sufficient evidence that defendant committed identity theft and that the trial court erred in denying defendant Jones's motion to dismiss. Therefore, I concur in part and dissent in part.

Justice BEASLEY joins in this opinion.

*HUDSON, J., concurring in part and dissenting in part*