An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-797

NORTH CAROLINA COURT OF APPEALS

Filed:  17 February 2015

STATE OF NORTH CAROLINA

v.

TERRY LEE WHITE

Columbus County
No. 10 CRS 051833

Appeal by defendant from judgment entered 19 December 2013 by Judge Douglas B. Sasser in Columbus County Superior Court. Heard in the Court of Appeals 4 November 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Lisa K. Bradley, for the State.*

> *William D. Spence for defendant-appellant.*

McCULLOUGH, Judge.

Defendant Terry Lee White appeals his conviction of sexual offense against a minor while in a parental role.  For the reasons stated herein, we hold no error.

## I.   Background

Defendant was indicted in case number 10 CRS 51832 for one count of statutory rape or sexual offense of a person who is 13,

14, or 15 years old and one count of sexual offense by a person in a parental role based on offenses alleged to have occurred in January 2007. On 7 October 2010, defendant was indicted in case number 10 CRS 51833 for one count of statutory rape or sexual offense of a person who is 13, 14, or 15 years old and one count of sexual offense by a person in a parental role based on offenses alleged to have occurred in October 2006.

Defendant's case came on for trial on 16 through 19 December 2013 in Columbus County Superior Court, before the Honorable Douglas B. Sasser, presiding. The evidence indicated that defendant was involved in a dating relationship with Ms. North[1] from 2001 until 2010. Ms. North has two daughters, Cara and Elizabeth, who are not defendant's biological children. Cara and Elizabeth are nine months apart and were seven years old when Ms. North began dating defendant.

Ms. North testified that she was born and raised in Columbus County but moved to Rockingham County in 2002 with defendant and her two daughters. Ms. North returned to Columbus County in 2003, went back to Rockingham County in 2004, and finally returned to Columbus County in 2006. During these

---

[1]Pseudonyms have been used throughout this opinion to protect the identity of some individuals.

times, she testified that defendant lived or stayed with her family "[m]ost of the time."

Ms. North paid the rent and light bill. Defendant worked and "would help provide, you know, things for [the kids], give [Cara] snack money for school, basic things, make sure they get Christmas, you know." Cara testified that that she viewed defendant "[l]ike a stepdaddy." Defendant would buy Cara and Elizabeth "stuff at the store" but would never discipline them.

In 2003, when Cara was nine years old, defendant told Cara that he was taking her to her friend's house. Instead, defendant took Cara "down a dirt road and stopped and asked me what would I do to keep [Ms. North] from going to jail."

> I started naming things and he said anything and I said yeah, why. He unzipped his pants and pulled out a knife to fix his crack can and showed me naked pics of [Ms. North] smoking weed and told me if I told anybody he would turn them into the police and [Ms. North] would go to jail and me and [Elizabeth] would be separated in two homes. I didn't want that. He made me . . . suck his thing[.]

Cara testified that in October 2006, when Cara was twelve years old, defendant asked Cara to go into a back room of the house. Defendant pulled his pants down and sat on the bed, Cara sat beside him, and defendant forced Cara to perform oral sex on him. Cara further testified that

> [Defendant] would always tell me either I would stay home while my mom went to the store and I would ride with him to the store but in October when we moved back to Columbus County the first time he told me to go in my mama's room; he said you know what I want you to do[.]

Defendant would "have [Cara] perform oral sex on him and he put some crack on a can and smoked it." Defendant threatened Cara that if she told anyone about their encounters, he would show the incriminating pictures of Ms. North to the police.

Cara also testified to a second incident with defendant in Columbus County:

> The second time he said come on back here, you know what you've got to do and I started to run out the back door to my neighbor's house and he grabbed my arm. He said he swears and promises if I don't tell he will never do it again and he never done it again.

Cara testified that she believed that defendant wanted her to perform oral sex on him.

Detective Rene Trevino with the Columbus County Sheriff's Department testified that on 23 May 2010, she came into contact with Cara and Ms. North. Cara and Ms. North had come into the sheriff's office to report a sexual assault. A recording of Detective Trevino's interview of Cara and Ms. North was admitted

into evidence. Detective Trevino testified that she made a referral to the department of social services.

Diane Guedo, a family nurse practitioner who was employed at a child advocacy center, evaluating children with suspected sexual and physical abuse, testified for the State. She was tendered as a specialist in sexual abuse, physical abuse, and neglect. Guedo testified that she conducted a child medical examination of Cara on 13 July 2010. Cara told Guedo about two "incidents with [defendant]" that began at age nine. Cara also talked about an incident after 2006 where defendant came into her room and "licked her genital area." Based on the results of a physical exam, Guedo testified that she could not tell if there had been any trauma to Cara's genital area in 2006 or in 2007. She further testified that an absence of physical findings did not support nor discount a disclosure of sexual abuse.

Marcie Thompson, an investigator and assessor for the Columbus County Department of Social Services, testified that she came into contact with Ms. North in 2010. Thompson had received a report containing allegations of inappropriate sexual contact by a person living as a stepfather and caretaker in the home and was able to conduct an interview with Ms. North.

At the close of the State's evidence, both charges in case number 10 CRS 51832 were dismissed. At the close of all the evidence, the charge of statutory rape or sexual offense of a person who is 13, 14, or 15 years old in case number 10 CRS 51833 was dismissed.

On 19 December 2013, a jury found defendant guilty of a sexual offense against a minor while in a parental role. Defendant was sentenced to a term of 40 to 57 months imprisonment. Defendant appeals.

## II. Discussion

On appeal, defendant argues that the trial court erred by (A) denying defendant's motion to dismiss the charge of committing a sexual offense against a minor while in a parental role for insufficiency of the evidence; (B) failing to instruct the jury on all elements of the crime of sexual offense while in a parental role; (C) failing to define the terms "minor" and "fellatio"; and (D) admitting the testimony of Diane Guedo.

### A. Motion To Dismiss

Defendant first argues that the trial court erred by denying his motion to dismiss the charge of sexual offense against a minor while in a parental role because there was

insufficient evidence that defendant had assumed the position of a parent in the victim's home in October 2006.  We disagree.

> When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines whether the State presented substantial evidence in support of each element of the charged offense. Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion.  In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence.

*State v. Jones*, 367 N.C. 299, 304, 758 S.E.2d 345, 349 (2014) (citation and quotation marks omitted).

Here, defendant was charged with sexual offense against a minor while in a parental role in violation of N.C. Gen. Stat § 14-27.7(a).  "This crime requires a finding that the defendant had (1) assumed the position of a parent in the home, (2) of a minor victim, and (3) engaged in a sexual act with the victim residing in the home."  *State v. Oakley*, 167 N.C. App. 318, 322, 605 S.E.2d 215, 218 (2004) (citation omitted).

Defendant now argues that there was insufficient evidence of the required element that defendant assumed a position of a parent in the home.  It is well established that "to convict a

defendant of violating G.S. § 14-27.7(a), the evidence of the relationship between the defendant and the child-victim must provide support for the conclusion that the defendant functioned in a parental role. Such a parental role will generally include evidence of emotional trust, disciplinary authority, and supervisory responsibility." *State v. Bailey*, 163 N.C. App. 84, 93, 592 S.E.2d 738, 744 (2004).

Defendant cites to our Court's holding in *State v. Bailey*, 163 N.C. App. 84, 592 S.E.2d 738 (2004), to support his argument. In *Bailey*, the defendant was charged with sexual offense by a substitute parent in violation of N.C. Gen. Stat. § 14-27.7(a) (2003). *Id.* at 92, 592 S.E.2d at 744. At trial, evidence demonstrated that the defendant was never romantically involved with the victim's mother. *Id.* at 94, 592 S.E.2d at 744-45. The victim's mother testified that the defendant "helped with the kids" and "would just baby sit them" in return for the victim's mother allowing the defendant to sleep in her residence without paying rent. There were also several statements made at trial and to officers that the defendant "watched" the children in the household and was a "babysitter" to the children. *Id.* at 94, 592 S.E.2d at 745. Our Court held that the evidence, taken in the light most favorable to the

State, was sufficient "to establish only that defendant babysat" for the children in the household. *Id.* The victim's mother did not regard the defendant as her boyfriend or as a *de facto* stepfather to her children. The record also did not indicate whether "[the] defendant's 'babysitting' had a quasi-parental quality[.]" *Id.*

> [T]here was no evidence regarding whether defendant was authorized to make disciplinary decisions, assist with homework, treat minor injuries, decide whether the children could leave the apartment, or take them out of the apartment himself.
>
> Even more significant is the absence of any evidence tending to show that the defendant and [the victim] had a relationship based on trust that was analogous to that of a parent and child.

*Id.* Based on the foregoing, our Court reversed the defendant's conviction of violating N.C. Gen. Stat. § 14-27.7(a). *Id.* at 95, 592 S.E.2d at 745.

After thorough review, we find the facts of the case before us distinguishable from the facts found in *Bailey*. In the present case, it was undisputed that defendant was involved in a romantic, dating relationship with the victim's mother, Ms. North from 2001 until 2010. Ms. North testified that defendant lived with the family "[m]ost of the time" during these years.

Cara testified regarding her relationship with defendant and described defendant's role in her home as a "stepdaddy." Although Cara testified that defendant never disciplined her, she testified that defendant would purchase "stuff at the store" for her. Ms. North testified that defendant "acted like he loved" her daughters. Defendant would "help provide, you know, things for them, give [Cara] snack money for school, basic things, make sure they get Christmas, you know." Ms. North regularly left defendant to supervise Cara and Elizabeth and Cara testified that defendant determined whether she would stay at home with defendant while Ms. North went to the store or whether she would accompany defendant to the store.

Unlike the *Bailey* case, the evidence here indicates that defendant and Cara had a relationship that was analogous to that of a parent and child. Defendant had supervisory responsibility over Cara, helped provide her with things such as money and food, "acted like he loved" Cara, and functioned as a "stepdaddy" to Cara. Viewing this evidence in the light most favorable to the State, we hold that there was sufficient evidence to support the element that defendant served in a parental role. Accordingly, we hold that the trial court did

not err by denying defendant's motion to dismiss and overrule defendant's argument.

### B.    Jury Instruction

In his second issue on appeal, defendant argues that the trial court erred by failing to instruct the jury on all the elements of sexual offense against a minor while in a parental role.    Specifically, defendant argues that the trial court failed to state that the jury must find that the victim was a minor.

"Jury instructions not challenged at trial are normally reviewed for plain error." *State v. Smith*, __ N.C. App. __, __, 736 S.E.2d 847, 850 (2013).    "Under the plain error standard, defendant must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict." *State v. Haire*, 205 N.C. App. 436, 440, 697 S.E.2d 396, 399 (2010) (citation omitted).

Defendant contends that because the trial court omitted an essential element, that the victim must be a minor, from the jury instruction, harmless error applies. *See Smith*, __ N.C. App. at __, 736 S.E.2d at 850 (citations omitted) (stating that a "'trial court's omission of elements of a crime in its recitation of jury instructions is' treated as an unwaivable

violation of the right to a unanimous jury found in Article I, Section 24 of the North Carolina Constitution, and, therefore, is 'reviewed under the harmless error test'"). However, we hold that harmless error analysis does not apply to the present case because the trial court did not omit any necessary element from defendant's jury charge.

As previously stated, the elements of sexual offense against a minor while in a parental role requires a finding that the defendant: (1) assumed the position of a parent in the home, (2) of a minor victim, and (3) engaged in a sexual act with the victim residing in the home. *Oakley*, 167 N.C. App. at 322, 605 S.E.2d at 218. In the present case, the trial court gave the following instruction to the jury:

> The defendant has been charged with committing a sex offense while in a parental role.
>
> For you to find the defendant guilty of this offense the State must prove two things beyond a reasonable doubt.
>
> First, that the defendant engaged in a sexual act with the victim; fellatio is a sexual act.
>
> Second, that the defendant has assumed the position of a parent in the home of a minor with whom the minor was residing in the house.
>
> If you find from the evidence beyond a

reasonable doubt that on or about the alleged date the defendant engaged in a sexual act with the victim and that the **victim was a child under 18 years of age** and that the defendant had assumed the position of a parent in the home in which the minor was residing, it would be your duty to return a verdict of guilty.

If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

(emphasis added).

Here, the trial court clearly stated that in order for the jury to find defendant guilty of sexual offense while in a parental role, the jury must find beyond a reasonable doubt that the "victim was a child under 18 years of age." Furthermore, defendant does not challenge the age of the victim, Cara. Cara testified that her birthday was 1 February 1994 and it was established that at the time of the alleged offense in October 2006, Cara was twelve years old. Based on the foregoing, defendant is not able to demonstrate that the challenged jury instruction was made in error, much less plain error. Defendant's argument is overruled.

C.  Defining the Terms "Minor" and "Fellatio"

In his next argument, defendant asserts that the trial court committed plain error in its jury instructions by failing to define the terms "minor" and "fellatio." We disagree.

"In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Bell*, 359 N.C. 1, 23, 603 S.E.2d 93, 109 (2004) (citation omitted). Our Courts have held that "[i]t is not error for the court to fail to explain words of common usage in the absence of a request for special instructions." *State v. Riddle*, 45 N.C. App. 34, 39, 262 S.E.2d 322, 325 (1980).

In the case before us, the trial court stated that in order to find defendant guilty of sexual offense against a minor while in a parental role, the jury must find that "the victim was a child under 18 years of age." Although the trial court did not specifically state that "a child under 18 years of age" is considered a "minor," we believe the term "minor" is a term of common usage. In addition, the record does not indicate that defendant made a request for special instructions on the word "minor." Therefore, the trial court did not err, much less commit plain error, in failing to define this term.

In regards to the term "fellatio," the trial court stated in its jury instructions that in order to find defendant guilty, the jury must find that "defendant engaged in a sexual act with the victim; fellatio is a sexual act." Once again, the record is devoid of any evidence that defendant requested a special instruction on this term. Further, defendant does not cite to any authority requiring a trial court to define the term "fellatio." Our Court has previously held that where a defendant "fails to cite to any case law or statute which requires the trial court to define those terms during its jury instruction," a defendant has failed to meet his burden under plain error review to warrant a new trial. *State v. Wood*, 174 N.C. App. 790, 794, 622 S.E.2d 120, 123 (2005) (where the defendant failed to cite to any authority that required the trial court to define the terms "driving while license revoked," "negligent driving," and "reckless driving," the trial court did not commit plain error in failing to define those terms). Accordingly, we overrule defendant's arguments.

### D. Admitting the Testimony of Diane Guedo

In his last issue, defendant contends that the trial court erred by allowing expert witness Diane Guedo to testify that Cara would be a "very good candidate for trauma focused

cognitive behavioral therapy." Defendant argues that this testimony was irrelevant, that it amounted to impermissible vouching for Cara's credibility, and that Guedo was not qualified to give such an opinion.

Diane Guedo testified that she was employed as a child medical examiner at a child advocacy center that evaluates children with suspected sexual and physical abuse. Guedo was a family nurse practitioner who received her training at George Washington University and a master's degree from the University of Rochester. She testified that she had worked primarily in primary care pediatrics for the last twenty-one years and had evaluated 771 children. Guedo was tendered as a specialist in sexual abuse, physical abuse, and neglect. Upon the State's tender of Guedo as an expert witness, defendant objected. After voir dire of *Guedo*, defendant withdrew his objection.

Guedo testified that she performed a child medical examination on Cara on 13 July 2010. The child medical examination included an interview of the non-offending care giver, a complete medical examination, and seventeen pages of additional documentation. Guedo indicated that there were no physical findings of trauma to Cara's genital area at the time of the examination and testified that she could not tell if

there had been trauma to Cara's genital area in 2006. Based on her examination, Guedo testified that the lack of physical findings neither supported nor discounted a disclosure of sexual abuse. Nevertheless, Guedo testified that Cara described the incidents of sexual abuse to her. The following exchange occurred:

> [THE STATE:] . . . Ms. Guedo, based on what [Cara] told you if that did in fact occur what kind of psychological care would you have prescribed?
>
> [DEFENSE COUNSEL:] Objection.
>
> THE COURT: Do you wish to be heard?
>
> [DEFENSE COUNSEL:] I don't think this witness based on our case law it is permissible to answer that.
>
> THE COURT: Overruled, you may answer the question.
>
> [MS. GUEDO:] I thought she would be a very good candidate for trauma focused cognitive behavioral therapy.
>
> [DEFENSE COUNSEL:] Objection as to relevance, move to strike. What relevance does it have about whether this happened or not?
>
> THE COURT: Overruled.

On appeal, defendant first contends that this foregoing testimony was irrelevant. The applicable standard of review is as follows:

>Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as 'abuse of discretion' standard which applies to rulings made pursuant to Rule 403.

*State v. Blakney*, __ N.C. App. __, __, 756 S.E.2d 844, 847 (2014) (citation omitted).

>The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible.

*State v. Royster*, __ N.C. App. __, __, 763 S.E.2d 577, 580-81 (2014) (citation and quotation marks omitted). Furthermore, pursuant to Rule 403 of the North Carolina Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

In the present case, we believe that the challenged testimony was irrelevant as it did not have a logical tendency to prove any fact that is of consequence. Nevertheless, given Cara's personal testimony regarding the sexual abuse by defendant and the remainder of Guedo's testimony corroborating Cara's account, we believe any error by the admission of this testimony was harmless. *See* N.C. Gen. Stat. § 15A-1443(a) (2013) (stating that error is prejudicial when "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises").

Next, defendant argues that Guedo's testimony "implie[d] to the jury that [Cara] was telling the truth, that the oral sex actually happened." Our Courts have established that "the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*,

355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (emphasis in original).

Here, however, we find defendant's characterization of Guedo's testimony erroneous and hold that the challenged testimony does not constitute impermissible vouching for Cara's credibility. Guedo did not testify that sexual abuse had, in fact, occurred. Rather, Guedo was answering a hypothetical question presented by the State – that if Cara's descriptions of the alleged sexual incidents with defendant were true, what type of psychological care and treatment would Guedo have prescribed. Therefore, defendant's argument is overruled.

In his last argument, defendant asserts that it was error for the trial court to allow Guedo to testify regarding the type of psychological care she would have prescribed had Cara, in fact, been sexually abused because Guedo was not qualified to render her opinion on this issue.

Pursuant to N.C. Gen. Stat. § 8C-1, Rule 702 (2013), a witness may be qualified as an expert if the trial court finds that through "knowledge, skill, experience, training, or education" the witness has acquired such skill that he or she is better qualified than the jury to form an opinion on the particular subject. Because defendant failed to object to the

admission of this testimony at trial, our review is limited to plain error. *State v. Henderson*, 182 N.C. App. 406, 414, 642 S.E.2d 509, 514 (2007) (citation omitted) (providing that "[p]lain error has been defined as 'error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached'").

At trial, Guedo testified that she worked at a child advocacy center, evaluating children with suspected abuse, both sexual and physical. Guedo was a family nurse practitioner who had worked in primary care pediatrics for twenty-one years and had evaluated 771 children in her current position. It was her eighth time testifying as a witness as a specialist in sexual abuse, physical abuse, and neglect. After the State tendered Guedo as an expert in abuse and neglect, defendant objected, but then later removed his objection.

The questions posed by the State and answers given in qualifying Guedo as an expert in abuse and neglect failed to establish that Guedo had any particularized experience or training relating to prescribing psychological care to those who were abused or neglected. It is also unclear whether an expert in abuse and neglect would have any training or experience

related to trauma focused cognitive behavioral therapy. However, even if we were to hold that this testimony was improperly admitted because the State failed to lay a sufficient foundation to establish that Guedo was qualified to offer the challenged testimony, we hold that this error would fall short of amounting to plain error based on Cara's testimony and the testimony of corroborating witnesses.

No error.

Judges CALABRIA and STROUD concur.

Report per Rule 30(e).